JACK FISHER, TRANSFEREE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Fisher v. Commissioner
Docket Nos. 9383-90, 9416-90, 9417-90
United States Tax Court
T.C. Memo 1993-139; 1993 Tax Ct. Memo LEXIS 139; 65 T.C.M. (CCH) 2284; April 5, 1993, Filed *139 Decisions will be entered under Rule 155. Held: a cash lease to a member of the family of a qualified heir is a cessation of qualified use by the qualified heir, resulting in the imposition of the additional estate tax under I.R.C. sec. 2032A(c). Williamson v. Commissioner, 93 T.C. 242 (1989), affd. 974 F.2d 1525 (9th Cir. 1992), followed. For petitioners: Gregory L. Franken and David B. Sutton. For respondent: Leann Page Drummond. NIMS
NIMS
MEMORANDUM OPINION NIMS, Judge: In this consolidated proceeding respondent determined the following deficiencies: Additional estate
tax under Additions to Tax
Petitioner
sec. 2032A(c)
sec.6651(a)(1)
sec. 6651(a)(2)
John Fisher
$ 9,993.70
$ 2,248.58
$ 2,498.43
Effie Birch
10,861.80
2,443.91
2,715.45
Reba L. Mooney
19,799.56
4,454.90
4,949.89
Respondent has conceded that there are no additions to tax due from any of the petitioners. Consequently, the only issue for decision is whether petitioners became liable for additional estate tax under section 2032A(c)(1) when they, as qualified heirs, cash leased qualified real property to another qualified *140 heir. (Unless otherwise indicated, section references are to sections of the Internal Revenue Code in effect as of all relevant times.) At the time the petitions were filed, each petitioner was a resident of Kansas. This case was submitted fully stipulated and by this reference we incorporate the stipulated facts into this Opinion. Petitioners' mother, Rebecca V. Fisher (decedent), died intestate on May 27, 1977, at which time she was a resident of Kansas. At the time of her death she owned real property in Chautauqua County, Kansas (the Kansas property), which she had used before her death for raising cattle with the assistance of her son, Chester Fisher (Chester). At the time of her death decedent also owned property in New Mexico (the New Mexico property). As of the time this case was presented, in November, 1991, Chester had continuously used the Kansas property for raising cattle from at least the date of decedent's death. Each of decedent's six children, including petitioners and their brother Chester, inherited a one-sixth undivided interest in the Kansas property and in the New Mexico property. As to the Kansas property, decedent's personal representative elected the *141 special use valuation authorized by section 2032A(a). Each of decedent's six children and their respective spouses executed the agreement required by section 2032A(d), whereby they consented to the application of section 2032A(c). Respondent accepted the section 2032A(a) election and the value used by the estate for section 2032A election purposes. Sometime after the execution and delivery of the aforementioned agreement decedent's six children exchanged their undivided interests in the Kansas and New Mexico properties for separately held interests in such properties. Each of the parties to the exchange was a "member of the family," as defined in section 2032A(e)(2), of each other party to the exchange for purposes of section 2032A(e)(2)(A). The following table reflects the special use value and fair market value of the Kansas property which each petitioner received in the exchange: Petitioner
Special Use Value
Fair Market Value
Jack Fisher
$ 13,238.40
$ 48,000
Effie Birch
14,396.27
52,200
Reba L. Mooney
27,123.20
96,000
Sometime after the exchange, petitioners leased their Kansas properties on a cash rental (cash lease) basis to their brother Chester, and *142 have continued to do so at all subsequent times. The parties agree that the Kansas property originally qualified for special use valuation and that each petitioner fits the definition of "qualified heir." Where the parties disagree is whether the cash leases of the Kansas property to Chester triggered the additional estate tax imposed by section 2032A(c)(1). The question above posed in this case is essentially the same question previously posed in Williamson v. Commissioner, 93 T.C. 242 (1989), affd. 974 F.2d 1525 (9th Cir. 1992); and Shaw v. Commissioner, T.C. Memo. 1991-372. [2]
*143 In Williamson we held that cash leasing property to someone else (except in the case of a surviving spouse, see section 2032A(b)(5)(A)), constitutes use of the property by the qualified heir in a passive rental activity, and not the qualified use of the property as required by section 2032A(c)(1)(B). Williamson v. Commissioner, 93 T.C. at 247, 251. Relying extensively on the language and legislative history of two amendments to the statute, we stated that Congress legislated from the premise that the cash rental of specially valued property by the qualified heir to a family member is not a qualified use but is a recapture event. Id. at 251. In a two-to-one decision the Ninth Circuit affirmed our decision in Williamson. Williamson v. Commissioner, 974 F.2d 1525 (9th Cir. 1992). In Shaw v. Commissioner, T.C. Memo. 1991-372, 62 T.C.M. (CCH) 396, 60 T.C.M. (P-H) P 91,372, we followed our decision in Williamson (the case on appeal not having been decided at the time we decided Shaw), stating that "Because * * * *144 [taxpayer's] cash lease of the ranch property to her son is a passive rental activity, we hold that * * * [taxpayer] ceased to use the property for a qualified use within the meaning of sections 2032A(c)(1)(B) and 2032A(c)(6)(A)." In arriving at this holding in Shaw we said that we see no basis in the statute as written for distinguishing Williamson from the case at bar. Contrary to * * * [taxpayer's] assertion, whether the lessee is a member of the qualified heir's family is not a controlling consideration. Rather, the controlling issue is whether the qualified heir ceased to use the property in question for a qualified use. [Shaw v. Commissioner, T.C. Memo. 1991-372.]
In light of the exhaustive consideration given the question by this Court and the Ninth Circuit in Williamson, and again by this Court in Shaw (although Shaw, as noted, was decided before the Ninth Circuit decided the appeal in Williamson), we would be content to decide this case simply by following Williamson without replowing the same ground for a fourth time. For completeness, however, we deem it advisable to address *145 Judge Reinhardt's analysis in his Williamson dissent on appeal. The dissenting opinion urges that a rigorous analysis of the relevant Code provisions leads to the conclusion that the cash lessee's status as a member of the qualified heir's family is a controlling consideration and that the family member's qualified use may be imputed to the qualified heir for purposes of section 2032A(c)(1)(B). For convenience, we have reproduced Code provisions relevant for our purposes in Appendix A, together with what we deem to be adequate summaries of these provisions. Basically, the question which must be answered is whether section 2032A(c)(1)(B) requires that the qualified heir himself put the property to a qualified use. If so, petitioners must lose. Petitioners must lose under this scenario because by cash leasing the Kansas property to Chester they personally have ceased to use the Kansas property for cattle raising, the "qualified use" by which favored tax treatment was initially received. The Ninth Circuit majority held that section 2032A(c)(6)(A) neither modifies nor operates independently of subsection (c)(1)(B). Rather, subsection (c)(6)(A) simply "clarifies" that portion *146 of the statutory language imposing on the qualified heir the obligation personally to conduct a qualified use of the property. Williamson v. Commissioner, 974 F.2d at 1530. The dissent in Williamson on appeal argues, on the other hand, that section 2032A(c)(6), which delineates what is meant by "cessation of qualified use," does modify section 2032A(c)(1)(B). The dissenting judge's argument goes like this: the additional estate tax is imposed if the qualified heir ceases to use the qualified real property for the qualified use. (subsection (c)(1)(B)). But if, goes the argument, while the qualified heir continues to hold the property there was material participation by any member of his family in the operation of the farm or other business, then there is no cessation of qualified use "for purposes of paragraph (1)(B)". (See catchline of subsection (c)(6) and subsection (c)(6)(B)(ii)). In other words, and as stated above, the two sections read together permit the imputation of the qualified use by the family member to the qualified heir. In Williamson and Shaw, as in the case before us, it is undisputed that the cash lessee *147 was and is a member of the qualified heir's family as defined in section 2032A(e)(2). We note, perhaps parenthetically, that Chester's cattle raising activity on the Kansas property appears to qualify under the definition of "material participation" contained in section 2032A(e)(6), which cross-references section 1402(a)(1) (relating to net earnings from self-employment), but petitioners' participation as cash-lessors would not qualify since they are not crop-sharing with Chester. We also note at this point that a section of the Revenue Bill of 1992, H.R. 11, 102d Cong. 2d Sess. (1992), which passed both Houses of Congress but failed to become law, would have reversed the holding of Williamson, effective retroactively for cash rentals to a member of the family after December 31, 1976. See Statement of Managers and Conference Bill at 418-419. Returning now to our Opinion in Williamson v. Commissioner, the basis for our holding is succinctly summarized in the following paragraphs: Looking at the language of section 2032A(c)(1)(B) and its amplifying section 2032A(c)(6)(A), both of which deal with the cessation of qualified use, we find there is no provision permitting the *148 qualified heir to cash rent the property to anyone else, even to a family member, without incurring the recapture tax. Section 2032A(c)(1)(B) provides for the imposition of the recapture tax if the qualified heir, petitioner in this case, ceases to use the property for the qualified use. In defining cessation of qualified use, section 2032A(c)(6)(A) provides, in effect, that real property devoted to farming purposes will cease to be used for the qualified use if the qualified heir himself or herself ceases to use it as a farm for farming purposes. Although section 2032A(c)(6)(A) does not repeat the reference made in section 2032A(c)(1)(B) to the qualified heir, we think the reference is implicit. Cash leasing the property to someone else constitutes use of the property by the qualified heir in a passive rental activity, not use of the property as a farm for farming purposes. Martin v. Commissioner, 783 F.2d at 83; see H. Rept. 97-201 (1981), 1981-2 C.B. 352, 382; Estate of Abell v. Commissioner, 83 T.C. at 701-702. The language defining qualified use in section 2032A(c)(6)(A) contrasts sharply *149 with the language used to define material participation in section 2032A(c)(6)(B). The material participation test may be met by either the qualified heir or members of his family. Sec. 2032A(c)(6)(B)(ii). Sections 2032A(c)(1)(B) and 2032A(c)(6)(A) contain no reference to members of the qualified heir's family, only to the qualified heir. To adopt petitioner's reading of the two provisions would require us to ignore this language difference. [Williamson v. Commissioner, 93 T.C. at 247-248.] The Ninth Circuit stated that "We agree with the Tax Court that Williamson's proposed interpretation of section 2032A is untenable." Id., F.2d at 1530. Adopting much of our analysis, the Court went on to say that By its language, subsection (c)(6)(A) does not stand alone in defining a cessation of qualified use. It specifically refers and incorporates into its definition subsection (c)(1)(B), the provision that requires the qualified heir to undertake the qualified use. Contrary to Williamson's assertion, then, subsection (c)(6)(A) neither modifies nor operates independently of subsection (c)(1)(B). Rather, subsection (c)(6)(A) simply clarifies *150 that portion of the statutory language imposing on Williamson, the qualified heir, the obligation personally to conduct a qualified use of the property. [Id., 574 F.2d at 1530.] In our Williamson Opinion we also observed that "In enacting the special use valuation provisions, Congress recognized that an estate's beneficiaries would enjoy an unwarranted windfall if they should sell the property within a short time or if they should fail to continue to use the property for farming or small business purposes". Id., 93 T.C. at 244. We have considered petitioners' arguments as to why we should reject the rationale of Williamson and find them unpersuasive. Accordingly, we hold for respondent on this issue. To reflect this holding, and concessions, Decisions will be entered under Rule 155. APPENDIX A Section 2032A provides, in pertinent part: SEC. 2032A. VALUATION OF CERTAIN FARM, ETC., REAL PROPERTY. (a) VALUE BASED ON USE UNDER WHICH PROPERTY QUALIFIES. -- (1) GENERAL RULE. -- If -- (A) the decedent was (at the time of his death) a citizen or resident of the United States, and (B) the executor elects *151 the application of this section and files the agreement referred to in subsection (d)(2), then, for purposes of this chapter, the value of qualified real property shall be its value for the use under which it qualifies, under subsection (b), as qualified real property. * * * (b) QUALIFIED REAL PROPERTY. -- (1) IN GENERAL. -- For purposes of this section, the term "qualified real property" means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, but only if -- * * * (C) during the 8-year period ending on the date of the decedent's death there have been periods aggregating 5 years or more during which -- (i) such real property was owned by the decedent or a member of the decedent's family and used for a qualified use by the decedent or a member of the decedent's family, and (ii) there was material participation by the decedent or a member of the decedent's family in the operation of the farm or other business, and * * * (2) QUALIFIED USE. -- For purposes of *152 this section, the term "qualified use" means the devotion of the property to any of the following: (A) use as a farm for farming purposes, or (B) use in a trade or business other than the trade or business of farming. * * * (5) SPECIAL RULES FOR SURVIVING SPOUSES. -- (A) IN GENERAL. -- If property is qualified real property with respect to a decedent (hereinafter in this paragraph referred to as the "first decedent") and such property was acquired from or passed from the first decedent to the surviving spouse of the first decedent, for purposes of applying this subsection and subsection (c) in the case of the estate of such surviving spouse, active management of the farm or other business by the surviving spouse shall be treated as material participation by such surviving spouse in the operation of such farm or business. For purposes of subsection (c), such surviving spouse shall not be treated as failing to use such property in a qualified use solely because such spouse rents such property to a member of such spouse's family on a net cash basis. * * * (c) TAX TREATMENT OF DISPOSITIONS AND FAILURES TO USE FOR QUALIFIED USE. -- (1) IMPOSITION OF ADDITIONAL ESTATE TAX. -- *153 If, within 10 years after the decedent's death and before the death of the qualified heir -- (A) the qualified heir disposes of any interest in qualified real property (other than by a disposition to a member of his family), or (B) the qualified heir ceases to use for the qualified use the qualified real property which was acquired (or passed) from the decedent, then there is hereby imposed an additional estate tax. * * * (6) CESSATION OF QUALIFIED USE. -- For purposes of paragraph (1)(B), real property shall cease to be used for the qualified use if -- (A) such property ceases to be used for the qualified use set forth in subparagraph (A) or (B) of subsection (b)(2) under which the property qualified under subsection (b), or (B) during any period of 8 years ending after the date of the decedent's death and before the date of the death of the qualified heir, there had been periods aggregating more than 3 years during which -- (i) in the case of periods during which the property was held by the decedent, there was no material participation by the decedent or any member of his family in the operation of the farm or other business, and (ii) in the case of periods during which *154 the property was held by any qualified heir, there was no material participation by such qualified heir or any member of his family in the operation of the farm or other business. * * * (e) DEFINITIONS; SPECIAL RULES. -- For purposes of this section -- (1) QUALIFIED HEIR. -- The term "qualified heir" means, with respect to any property, a member of the decedent's family who acquired such property (or to whom such property passed) from the decedent. If a qualified heir disposes of any interest in qualified real property to any member of his family, such member shall thereafter be treated as the qualified heir with respect to such interest. (2) MEMBER OF FAMILY. -- The term "member of the family" means, with respect to any individual, only -- (A) an ancestor of such individual, (B) the spouse of such individual, (C) a lineal descendant of such individual, of such individual's spouse, or of a parent of such individual, or (D) the spouse of any lineal descendant described in subparagraph (C). For purposes of the preceding sentence, a legally adopted child of an individual shall be treated as the child of such individual by blood. For our purposes the essential provisions *155 of the above Code sections may be summarized as follows: 1. If the decedent died a resident of the United States and the personal representative properly makes the special use valuation election, then the "qualified real property" may be valued specially. Sec. 2032A(a)(1). 2. "Qualified real property" is property owned at death by the decedent which passed at death to a "qualified heir" of the decedent and which at that time was being used for a "qualified use" by the decedent or a member of the decedent's family, -- if, during the eight years before decedent's death there have been periods aggregating at least five years during which the property was owned and operated in a qualified manner by decedent or a member of decedent's family, -- and, there was "material participation" in the operation of the property by decedent or a member of decedent's family. Sec. 2032A(b)(1)(C). 3. If the decedent is survived by a spouse and the property passed at death to the surviving spouse, "active management" of the property by the surviving spouse is treated as "material participation" in the property by the surviving spouse, and for purposes of section 2032A(c) the surviving spouse *156 may make a cash lease to a "member of such spouse's family" without being treated as failing to use such property in a qualified use. Section 2032A(b)(5). 4. If, within 10 years after the decedent's death and before the death of the qualified heir, the latter "disposes of any interest in qualified real property (other than by a disposition to a member of his family)", or if the qualified heir ceases to use the farm for the qualified use, then the additional estate tax is imposed. Section 2032A(c)(1)(A) & (B). 5. For purposes of section 2032A(c)(1)(B) (relating to the qualified heir's use of the property), real property ceases to be used for the qualified use -- if the property ceases to be used for the qualified use set forth in section 2032A(b)(2)(A) or (B); i.e., farming or a trade or business other than the trade or business of farming, -- or if, during any period of eight years after decedent's death and before the qualified heir's death, there were periods aggregating more than three years during which, while decedent held the property, there was no material participation by decedent or any member of his or her family, and, while the property was held *157 by the qualified heir, there was no material participation in the operation of the property by the qualified heir or any member of his or her family. Sec. 2032A(c)(6)(A) & (B). 6. The definition of "Member of Family" for purposes of section 2032A includes, with respect to any person, such person's ancestor, spouse, "a lineal descendant of such individual, or of such individual's spouse, or of a parent of such individual," or the spouse of a lineal descendant of such individual. Section 2032A(e)(2). Footnotes
1. Cases of the following petitioners are consolidated herewith: Effie Birch, Transferee, docket No. 9416-90 and Reba L. Mooney, Transferee, docket No. 9417-90.↩
2. We note that H.R. 817, 103d Cong., 1st Sess., if enacted would amend sec. 2032A(c) to reverse, in effect, the holding in Williamson v. Commissioner, 93 T.C. 242 (1989), affd. 974 F.2d 1525↩ (9th Cir. 1992), with respect to estates of decedents dying after December 31, 1976.