T.C. Memo. 1997-56


UNITED STATES TAX COURT


RICHARD D. HOHENSTEIN, Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent


Docket No. 22282-94.                    Filed January 30, 1997.


     P, a qualified heir, received farm property
subject to a special use valuation election pursuant to
sec. 2032A, I.R.C.  P farmed the property for
approximately 8 years after the death of his father and
then, after becoming physically incapacitated, sold a
portion of the farmland and leased the remainder of the
property to unrelated parties on a cash basis.  <u>Held</u>:
As a result of the cash leases, P ceased to use the
property for its qualified use and is liable for
additional Federal estate tax imposed by sec. 2032A(c),
I.R.C.  <u>Williamson v. Commissioner</u>, 93 T.C. 242 (1989),
affd. 974 F.2d 1525 (9th Cir. 1992) and <u>Martin v.
Commissioner</u>, 84 T.C. 620 (1985), affd. 783 F.2d 81
(7th Cir. 1986), followed.


<u>C. Thomas Wilson</u>, for petitioner.

Mary E. Dean and John C. Schmittdiel, for respondent.

MEMORANDUM OPINION

NIMS, Judge:[*]  Respondent determined a deficiency of $93,866 in additional Federal estate tax against Richard D. Hohenstein (petitioner or Hohenstein), a qualified heir who received farm real estate subject to section 2032A.  The sole issue for decision is whether petitioner ceased to use qualified real property for a qualified use, rendering him liable for additional estate tax pursuant to section 2032A(c).  For the reasons that follow, we hold that he did.

All section references, unless otherwise specified, are to sections of the Internal Revenue Code in effect on the date of decedent's death.

This case was submitted on a stipulation of facts, and the facts as stipulated are so found.  This reference incorporates herein the stipulation of facts and attached exhibits. Petitioner resided in St. Peter, Minnesota, when he filed his petition.

Background

Petitioner's father, Marvin L. Hohenstein (decedent), died on October 3, 1983.  After his death, his estate timely filed a Form 706, United States Estate Tax Return.  The estate tax return

---

*This case was submitted to Judge Arthur L. Nims, III by Order of the Chief Judge.

contained a special use election pursuant to section 2032A requesting valuation of the decedent's real estate located in Nicollet County, Minnesota (the Nicollet farm), based on the qualified use of such property for farming. The Nicollet farm comprised approximately 342 acres of real property with a fair market value (based on highest and best use) of $626,200 at the time of decedent's death. With the special use election under section 2032A, the value of the Nicollet farm was set at $304,869, which amount was included in decedent's taxable estate.

Petitioner inherited the Nicollet farm from his father and is the qualified heir for section 2032A purposes. In accordance with section 2032A(d)(2), petitioner executed a Special Use Election Agreement (the Agreement) consenting to personal liability for additional estate tax, or "recapture" tax, on the Nicollet farm to the extent that the property was disposed of, or ceased to be used for a qualified purpose, during the applicable post-death period. As required by section 20.2032A-8(c)(1), Estate Tax Regs., the Agreement designated an agent, C. Thomas Wilson, to represent the qualified heir of the estate.

As filed, the estate tax return showed a total estate tax due of $4,685. Had the parties not elected the special use valuation for the farm, the estate would have owed an additional $120,988 in estate taxes at the time the return was filed. However, the requirements of section 2032A were met, and the

estate was entitled to, and properly received, a special valuation for the farm under section 2032A.

Petitioner farmed the Nicollet farm for almost 8 years, from the time of his father's death until early 1991. Respondent does not dispute that petitioner materially participated in farming the subject property during this period. On November 27, 1990, Hohenstein suffered an injury to his back, which necessitated surgery. Due to the injury, he can no longer perform the physical labor associated with farming.

As a result of petitioner's physical incapacity, on March 21, 1991,[1] he sold a 75-acre parcel of the Nicollet farm to an unrelated party. Shortly thereafter, he filed a Form 706-A, United States Additional Estate Tax Return, reporting the disposition and paying the recapture tax due of $27,122.

On March 31, 1991, petitioner entered into two separate cash leases with nonfamily members for the two parcels constituting the balance of the Nicollet farm (the subject property in the instant case).

The initial lease for the first parcel (consisting of approximately 105 acres) agreed to a 1-year term for the sum of $11,844, payable in a single installment due on or before April 15, 1991. The lease for the second parcel (comprising

---

[1] Although the parties stipulate that the date was March 31, 1991, the Schedule A attached to the Form 706-A states the date of disposition was March 21, 1991.

approximately 156 acres) agreed to a 3-year term at $19,578 per annum, payable in single installments due on or before May 1 of each year. None of the payments for the leases at issue depended upon farm production.

Prior to entering into the cash leases in March 1991, petitioner asked two local attorneys whether such an arrangement would be permissible under the terms and conditions of the Agreement. Hohenstein was advised that cash leases came within the ambit of section 2032A.

Despite his physical limitations, petitioner remains alert and suffers no mental incapacities. His back injury would not have prevented him from entering into a sharecropping arrangement for the Nicollet farm.

On April 21, 1994, for reasons not set forth in the record, petitioner submitted an amended United States Additional Estate Tax Return, Form 706-A, reporting additional estate tax due under section 2032A(c) of $64,159 stemming from the cash leases of the subject property. Although this amount was paid (with interest, for a total of $78,248.15), it had not yet been assessed. In connection with the receipt of this payment, respondent issued a Certificate of Release of Federal Estate Tax Lien with respect to the subject property on May 12, 1994.

On September 2, 1994, respondent timely mailed a statutory notice of deficiency to petitioner for the period ending March

21, 1991, in which a deficiency in Federal estate tax was determined in the amount of $93,866.

## Discussion

Generally, a decedent's gross estate subsumes the fair market value of the decedent's interest in all property in which he owned an interest at the time of death. Secs. 2032(a), 2033. However, in the case of certain real property used by the decedent or a member of his family for farming or in a closely held business, section 2032A allows the decedent's personal representative to elect to value the real property on the basis of its value as a farm or in the closely held business, rather than the fair market value of such property based on its "highest and best use". Sec. 2032A(e)(7) and (8); Stovall v. Commissioner, 101 T.C. 140, 146 (1993); sec. 20.2032A-3(a), Estate Tax Regs.

Section 2032A was added by the Tax Reform Act of 1976, Pub. L. 94-455, sec. 2003, 90 Stat. 1520, 1856. The purpose of the special valuation provision is to reduce the estate tax burden, thereby alleviating liquidity problems faced by the surviving family of a person who dies owning real property used as a farm or in a closely held business. H. Rept. 94-1380 at 21-22 (1976), 1976-3 C.B. (Vol. 3) 735, 755-756; S. Rept. 94-938 (Part 2), at 15 (1976), 1976-3 C.B. (Vol. 3) 643, 657. Congress sought to allow the family to continue operating the farm or other business, rather than force the sale of the land to pay estate

taxes.  <u>Estate of Mapes v. Commissioner</u>, 99 T.C. 511, 516-517 (1992); H. Rept. 94-1380, <u>supra</u>, 1976-3 C.B. (Vol. 3) at 755-756; S. Rept. 94-938 (Part 2), <u>supra</u>, 1976-3 C.B. (Vol. 3) at 657.

Although section 2032A is a relief statute designed to encourage the continuation of family farms, it provides for "exceptionally favorable tax treatment", and taxpayers must "come within its demanding terms".  <u>Martin v. Commissioner</u>, 783 F.2d 81, 82, 84 (7th Cir. 1986), affg. 84 T.C. 620 (1985).  The succor provided by section 2032A is limited in several ways:  (1) The decedent must have been a citizen or resident of the United States, and the subject property must be located in the United States; (2) the real property must have been used as a farm or in a trade or business by the decedent or a member of the decedent's family; (3) the decedent or a member of his family must materially participate in the operation of the farm or the business; and (4) real property qualifies for special use valuation only if it passes to a member of the decedent's family. Sec. 2032A(c).  These requirements all evidence Congress' intent to limit the tax relief to what is generally regarded as a family farm or business.  See <u>Estate of Heffley v. Commissioner</u>, 89 T.C. 265, 271 (1987), affd. 884 F.2d 279 (7th Cir. 1989); <u>Estate of Geiger v. Commissioner</u>, 80 T.C. 484, 488 (1983).

In enacting the special use valuation provisions, Congress also recognized that an estate's beneficiaries would enjoy an unwarranted windfall if they should sell the property within a

short time, or if they should fail to continue to use the property for farming or small business purposes, at least for a reasonable period of time after the decedent's death. See Martin v. Commissioner, 84 T.C. at 626. To guard against this occurrence, section 2032A(c)(1) imposes an additional estate tax, which applies in the case of an early disposition of qualified real property to a nonfamily member or an early cessation of the "qualified use". The qualified heir who receives the property becomes personally liable for the recapture tax unless he furnishes a bond. Sec. 2032A(c)(5). Each person having an interest in the property is required to consent to the collection of the tax from the property. Sec. 2032A(d)(2). Moreover, a special lien arises on the property subject to the election to insure that the additional tax will be collected should a recapture event occur. Sec. 6324B.

There is no question in the instant case that the farm property at issue was used in a qualified manner on the date of decedent's death; that it passed to petitioner, a qualified heir; that petitioner used the property in the qualified use until the cash leases were executed; and that petitioner materially participated in the qualified use (farming) from the date of decedent's death until early 1991. The sole issue presented for our decision is whether petitioner, by virtue of cash leasing the subject property, ceased to use qualified property for its qualifying use before the expiration of the 10-year post-death

period, entailing the imposition of additional estate tax under section 2032A(c).

Section 2032A(c)(1), which imposes the recapture tax, is as follows:

> (1) Imposition of additional estate tax.--If, within 10 years after the decedent's death and before the death of the qualified heir--
>
>> (A) the qualified heir disposes of any interest in qualified real property (other than by a disposition to a member of his family), or
>>
>> (B) the qualified heir ceases to use for the qualified use the qualified real property which was acquired (or passed) from the decedent, then there is hereby imposed an additional estate tax.

The term "qualified use" is defined in section 2032A(b)(2) as follows:

> (2) Qualified use.--For purposes of this section, the term qualified use means the devotion of the property to any of the following:
>
>> (A) use as a farm for farming purposes, or
>>
>> (B) use in a trade or business other than the trade or business of farming.

Cessation of qualified use as provided in section 2032A(c)(1)(B) is amplified in section 2032A(c)(6):

> (6) Cessation of qualified use.--For purposes of paragraph (1)(B), real property shall cease to be used for the qualified use if--
>
>> (A) such property ceases to be used for the qualified use set forth in subparagraph (A) or (B) of subsection (b)(2) under which the property qualified under subsection (b), or

(B) during any period of 8 years ending after the date of the decedent's death and before the date of the death of the qualified heir, there had been periods aggregating more than 3 years during which--

(i) in the case of periods during which the property was held by the decedent, there was no material participation by the decedent or any member of his family in the operation of the farm or other business, and

(ii) in the case of periods during which the property was held by any qualified heir, there was no material participation by such qualified heir or any member of his family in the operation of the farm or other business. [Emphasis added.]

Respondent contends that the post-death cash leasing of the Nicollet farm by petitioner to an unrelated party constituted a cessation of qualified use by the qualified heir under section 2032A(c)(1)(B), thus creating an obligation for additional estate tax.  On the other hand, petitioner maintains that "insofar as * * * [he] 'materially participated' in * * * [the Nicollet farm] for a period of eight continuous years following his father's death, there can be no cessation of 'qualified use' within the meaning of the Code."  Alternatively, petitioner contends that cash leases impose substantial risk due to the possibility of nonpayment.  Petitioner also argues that respondent's issuance of a Certificate of Release of Federal Estate Tax Lien indicates that respondent did not find the contested lease arrangements discrepant with the special use valuation provision.  Finally, petitioner claims that respondent's position subverts

Congressional intent in enacting section 2032A and ignores the personal circumstances driving the transactions at issue.

## I. Petitioner Erroneously Conflates the Material Participation and Qualified Use Provisions of Section 2032A(c)(6)

Petitioner equates the material participation requirement of section 2032A(c)(6)(B) with the qualified use requirement of section 2032A(c)(6)(A). Petitioner argues that because he materially participated in the farm after his father's death, he could not have ceased to use the farm for its qualifying use. However, the cessation of qualified use provision is phrased in the disjunctive and denotes two separate grounds for disqualification from favored tax treatment. Thus, cessation occurs if <u>either</u> the property ceases to be used for the qualified use by the qualified heir <u>or</u> the heir or his family does not materially participate in the qualified use. <u>Martin v. Commissioner</u>, 783 F.2d at 82; <u>Stovall v. Commissioner</u>, 101 T.C. at 148; <u>Williamson v. Commissioner</u>, 93 T.C. 242, 247 (1989), affd. 974 F.2d 1525 (9th Cir. 1992). The parties have stipulated to petitioner's material participation for the requisite period. Thus, we address only whether 2032A(c)(6)(A) has been satisfied, a wholly independent inquiry.

## II. Cash Leasing by a Qualified Heir to an Unrelated Party Constitutes a Cessation of Qualified Use

While section 2032A itself does not mention cash leasing, the legislative history of the statute and pertinent regulations discuss the effect of such leases on the qualified use of real

property. Much of the legislative history addresses pre-death qualified use; however, this Court has applied the discussion therein to post-death qualified use as well, since the term "qualified use" is defined only once in the statute and is used with reference to both pre- and post-death situations. Martin v. Commissioner, 84 T.C. at 627.

The House report accompanying the original legislation stressed that a qualified use requires active farming use of the property, stating that "The mere passive rental of property will not qualify". H. Rept. 94-1380, at 23, 1976-3 C.B. (Vol. 3) at 757. Furthermore, regulations add that "The decedent or a member of the decedent's family must own an equity interest in the farm operation." Sec. 20.2032A-3(b)(1), Estate Tax Regs.

Several amendments to section 2032A since its introduction in 1976 have produced narrow exceptions to the initial proscription on cash leasing. In 1981, Congress expanded the category of pre-death qualified use to include either a decedent or a member of his family farming the property prior to decedent's death. Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, sec. 421, 95 Stat. 172, 306. Thus, a cash lease between a decedent and a family member will not disqualify the property from special use valuation. H. Rept. 97-201, at 169, 1981-2 C.B. 352, 382.

The ERTA amendment was explained in S. Rept. 97-144, at 133 (1981), 1981-2 C.B. 412, 464, as follows:

The bill does not change the present law requirement
that a qualified use be an active trade or business use
as opposed to a passive, or investment use.

For example, if a decedent has leased otherwise
qualified real property to a son pursuant to a net cash
lease, and the son conducts a farming operation on the
property, the son's business use is attributed under
the bill to the decedent for purposes of satisfying the
qualified use requirement (sec. 2032A(b)(1)).  On the
other hand, during any period when the decedent leases
the real property to a nonfamily member for use in a
qualified use pursuant to a lease under which the
rental is not substantially dependent upon production,
the qualified use requirement is not satisfied. [Fn.
ref. omitted.]

With this amendment, Congress acknowledged that a decedent may

become ill or disabled in the years immediately preceding death.

Permitting a family member to farm the property prior to a

decedent's death facilitates an orderly transition of ownership.

H. Conf. Rept. 97-215, at 248 (1981), 1981-2 C.B. 481, 507-508;

S. Rept. 97-144, supra, 1981-2 C.B. at 463-464.  The committee

reports to the 1981 amendment state, however, that the new

provision did "not change the present requirement that the

qualified heir owning the real property after the decedent's

death use it in the qualified use throughout the recapture

period."  S. Rept. 97-144, supra, 1981-2 C.B. at 464; H. Rept.

97-201, supra, 1981-2 C.B. at 382.   Thus, post-death qualified

use remained person- and activity-specific.  See Shaw v.

Commissioner, T.C. Memo. 1991-372.

ERTA did make one change as to post-death qualified use.  It

enacted a 2-year grace period after decedent's death during which

the qualified heir may lease the property for cash. ERTA sec. 421, 95 Stat. 306. This narrow exception (not applicable here) supports the general rule that cash leasing is not an otherwise qualified use.

In 1988, another addition to section 2032A expanded the definition of post-death qualified use, enabling a surviving spouse to rent the property to a family member on a net cash basis. Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 6151, 102 Stat. 3342, 3724. This provision indicates yet again that a post-death net cash lease normally constitutes a cessation of qualified use. See Williamson v. Commissioner, supra at 251. Congress did not intend to alter the existing general rule that the cash rental of special use property by any other type of qualified heir would be treated as a recapture event. See H. Rept. 100-795, at 590 (1988) ("Cash rental of specially valued property is not a qualified use and, therefore, is treated as a recapture event.").

Case law, too, is replete with support for the proposition that post-death cash leasing, in areas other than the narrow statutory exception involving the spouse of the decedent and a family member, constitutes a cessation of qualified use. Martin v. Commissioner, 783 F.2d 81 (7th Cir. 1986), held that, if farm property is leased, such lease must provide an equity interest for the qualified heir. In other words, the return to the qualified heir must substantially depend upon farm production.

While a sharecropping arrangement is permissible, cash leasing the property to someone else constitutes use of the property by the qualified heir in a passive rental activity, not use of the property as a farm for farming purposes.  Id. at 84; see Williamson v. Commissioner, supra at 247.

The omnipresent risk of nonpayment does not suffice to turn a cash lease into an "at-risk" proposition for purposes of section 2032A.  In Williamson v. Commissioner, 93 T.C. 242 (1989), this Court held that a cash lease between the qualified heir, who lived in California and had inherited a Minnesota farm, and his nephew in Minnesota triggered a recapture tax.  See also Stovall v. Commissioner, 101 T.C. 140 (1993); Fisher v. Commissioner, T.C. Memo. 1993-139; Shaw v. Commissioner, supra.

Moreover, we have routinely found cash leases to nonfamily members to effect a cessation of qualified use, triggering the recapture tax.  In addition to Martin v. Commissioner, 84 T.C. 620 (1985), the Court in Hight v. Commissioner, T.C. Memo. 1990-81, found an oral cash lease to be a cessation of qualified use. See also LeFever v. Commissioner, 103 T.C. 525 (1994), supplemented by T.C. Memo. 1995-321, affd. 100 F.3d 788 (10th Cir. 1996) (holding that cash rental use of the property is not a trade or business and therefore does not constitute a qualified use).

In the instant case, the Nicollet farm was used by unrelated parties pursuant to leases under which the payments did not hinge

on farm production. The cash leases did not provide an equity interest for Hohenstein. The Court recognizes the plight of petitioner that led to his cash lease of the remaining parcels of the Nicollet farm just 2 years before the expiration of the 10-year post-death period. Hohenstein apparently relied on the advice of two local lawyers that such leases would not trigger a recapture tax, when a conceivable sharecropping arrangement would not have resulted in a cessation of qualified use. However, neither the Code nor the regulations envisage any de minimis exception to the qualified use requirement of section 2032A, and we see no basis for reading such an exception into that provision. See Martin v. Commissioner, supra at 635.

III. A Certificate of Release of Federal Estate Tax Lien Is Not a Concession by Respondent, and Does Not Preclude a Subsequent Assessment of Additional Estate Tax

Petitioner's argument that respondent's issuance of a Certificate of Release From Estate Tax Lien represents her acquiescence in the cash lease arrangements in question is unpersuasive. The release was not a concession by the respondent that the leases would not effect a recapture tax. Rather, the release was issued only after the receipt of an amended Form 706-A and a check from petitioner for $64,159 plus interest that purported to satisfy the additional estate tax owed. Moreover, although this amount appears to have been undercalculated as a result of the insertion of an incorrect fair market value on line 6 of the amended Form 706-A, respondent is not precluded from

collecting the proper sum despite having issued a certificate of release.  Section 301.6325-1(a)(1), Proced. & Admin. Regs., states: "In all cases the liability for the payment of the tax continues until satisfaction of the tax in full or until the expiration of the statutory period for collection".

## IV. Petitioner's Prayer for Equitable Relief Must Go Unanswered

Hohenstein's final argument is a prayer for equitable relief.  Regrettably for petitioner, this Court is not a court of equity and does not possess general equitable powers.  Stovall v. Commissioner, supra at 149-150 (citing Commissioner v. McCoy, 484 U.S. 3 (1987)).  Even a District Court, with equitable powers, cannot disregard statutory terms.  See INS v. Pangilinan, 486 U.S. 875, 883 (1988).  Therefore, we find all of petitioner's arguments unavailing and hold that the cash rental arrangement constituted a cessation of qualified use under section 2032A(c)(1)(B), thereby triggering a recapture tax.  See Stovall v. Commissioner, supra at 150.

To reflect the foregoing,

Decision will be entered

for respondent.