MARY EILEEN STOVALL, QUALIFIED HEIRESS OF ESTATE OF MARY E. KEYES, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 19432–91, 19433–91, 19434–91, 19435–91, 19436–91, 19437–91, 19438–91.

Filed July 29, 1993.

[1] Cases of the following petitioners are consolidated herewith: Barbara Jean Rhone, Qualified Heiress of Estate of Mary E. Keyes, docket No. 19433–91; Robert W. Stovall, Qualified Heir of Estate of Mary E. Keyes, docket No. 19434–91; Jennifer S. Dick, Qualified Heiress of Estate of Mary E. Keyes, docket No. 19435–91; Thomas M. Stovall, Jr., Qualified Heir of Estate of Mary E. Keyes, docket No. 19436–91; Eileena Rae Stovall, Qualified Heiress of Estate of Mary E. Keyes, docket No. 19437–91; Dorothy Gail Stovall Mallard, Qualified Heiress of Estate of Mary E. Keyes, docket No. 19438–91.

*William H. Coates,* for petitioners.
*Albert B. Kerkhove,* for respondent.

DAWSON, *Judge:* These cases were assigned to Special Trial Judge D. Irvin Couvillion pursuant to section 7443A(b)(3)[2] and Rules 180, 181, and 182. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

### OPINION OF THE SPECIAL TRIAL JUDGE

COUVILLION, *Special Trial Judge:* Respondent determined a deficiency of $2,861.87 in additional Federal estate tax against petitioner Mary Eileen Stovall, a qualified heir who received farm property subject to a section 2032A special use valuation. Respondent also determined a deficiency of $6,595.29 against each of the other qualified heirs whose cases are consolidated herewith.

The issues for decision are: (1) Whether petitioners are liable for additional Federal estate tax due to a cessation of qualified use of farm property under section 2032A(c)(1)(B), and (2) whether the notices of deficiency were issued within the 3-year period of limitations provided in section 2032A(f).

### FINDINGS OF FACT

Some of the facts were stipulated and are found accordingly. The stipulation and attached exhibits are incorporated by reference. Petitioners Mary Eileen Stovall, Robert W. Sto-

---

[2] Sec. 7443A refers to the Internal Revenue Code of 1986; however, unless otherwise indicated, all further section references are to the Internal Revenue Code of 1954, as amended and in effect as of the date of death of Mary E. Keyes, decedent, on Mar. 19, 1980. All Rule references are to the Tax Court Rules of Practice and Procedure.

vall, Thomas M. Stovall, Jr., and Eileena Rae Stovall were residents of Memphis, Tennessee, at the time their petitions were filed. Petitioners Barbara Jean Rhone, Jennifer S. Dick, and Dorothy Gail Stovall Mallard were, respectively, residents of Austin, Texas, Arlington, Texas, and Los Angeles, California, at the time their petitions were filed.

Petitioner Mary Eileen Stovall (hereinafter petitioner singularly) is the daughter of Mary E. Keyes, decedent, who died on March 19, 1980. The other petitioners are children of Mary Eileen Stovall and, therefore, the grandchildren of decedent Mary E. Keyes.

At the time of her death, the decedent owned four parcels of farmland in Sarpy County, Nebraska. In the decedent's last will and testament, one of the parcels of farmland, consisting of approximately 120 acres (hereinafter the Stovall farm), was devised to petitioner in trust for a term of 10 years, and, at the end of that period, the property would pass to petitioner's children. Upon agreement of all the parties involved, the Stovall farm was distributed to petitioner's children who, in turn, deeded back a life estate to petitioner.[3]

On December 18, 1980, Form 706, U.S. Estate Tax Return, was timely filed for the Estate of Mary E. Keyes with the Internal Revenue Service (IRS) District Director's office in Omaha, Nebraska. The estate tax return contained a special use election pursuant to section 2032A to value the four tracts of real property in decedent's estate, including the Stovall farm, based upon the qualified use of such property for farming. The estate tax return of the Estate of Mary E. Keyes was reviewed by an IRS estate tax attorney who verified that all section 2032A requirements were satisfactorily met, and a valid election had been made. There was no information required in the estate tax return nor was any information provided which would indicate the manner in which the property subject to section 2032A would be operated following the decedent's death.

The value of petitioner Mary Eileen Stovall's interest in the Stovall farm was $13,758.47, based on highest and best use. The special use farm value, for purposes of section 2032A, was $6,532.39. The highest and best use value of

---

[3] This change in the settlement of decedent's estate has no significance on the issues in this case.

each of the other petitioners' interests in the Stovall farm was $31,706.92. The special use value for purposes of section 2032A was $15,054.13. As required by section 2032A(d)(2), petitioners, as qualified heirs, signed agreements consenting to be individually responsible for additional estate tax or "recapture" tax in the event that their interests in the qualified real property, the Stovall farm, were disposed of or in the event the heirs ceased to use the property for its qualified use of farming within 15 years after the decedent's death.[4] As required by section 20.2032A-8(c)(1), Estate Tax Regs., the agreement designated an agent, Randall C. Hanson, to represent the qualified heirs of the estate. Mr. Hanson was the attorney who prepared and filed Form 706, U.S. Estate Tax Return, as representative of decedent's estate.

The farmland involved in this case, the Stovall farm, consisted of 120 acres and was, prior to decedent's death in 1980, operated as a family partnership between decedent and her son, Clarence O. Keyes. The land has been owned and farmed by this same family for over 50 years. In addition, there is a home located on the Stovall farm, where decedent raised her four children, including petitioner Mary Eileen Stovall. Following decedent's death in 1980, the Stovall farm was operated under a cash rental arrangement between petitioner Mary Eileen Stovall and her brother, Clarence O. Keyes (Mr. Keyes). Mr. Keyes paid petiticner $50 per acre in 1980 and 1981, and $55 per acre in the years thereafter. Mr. Keyes, as son of decedent, is also a qualified heir of the estate; however, he is not a party to these proceedings.

Petitioner discussed with her brother, Mr. Keyes, a number of times throughout each year the manner in which the Stovall farm was operated. In addition, at least twice a year, petitioner traveled to the Stovall farm and assisted in some degree in the physical operation of the farm by weeding or hoeing, observing the farm machinery during harvest, and preparing lunch for the farm laborers. Mr. Keyes grew corn, soybeans, and forage on the property.

Mr. Hanson, as the qualified heirs' designated agent, was first contacted by a letter dated December 4, 1987, he received from Gerald L. Adcock, the supervisory attorney of

---

[4] For the estates of decedents dying after Dec. 31, 1981, the 15-year period was amended to 10 years. Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 421(c)(1)(A), 95 Stat. 172, 307.

the estate and gift tax group for the Omaha, Nebraska, IRS District Director's office. Mr. Adcock's office was responsible for verifying that taxpayers and qualified heirs remained in compliance with section 2032A. This was the same office with which Form 706, U.S. Estate Tax Return, for the decedent was filed in 1980.

Accompanying the letter from Mr. Adcock was a questionnaire titled "Special Use Valuation Questionnaire, Omaha District". In his letter, Mr. Adcock advised:

As you know, Section 2032A(c) provides for a recapture tax, if the qualified heir ceases to use the qualified real property for a qualified use or disposes of the property—within the 15 year period following death.

To assist this office in evaluating the qualified heirs' compliance under Section 2032A(c), it would be appreciated if you could complete and return the attached questionnaire within twenty days of the receipt of this letter.

Mr. Hanson mailed a copy of the questionnaire to all petitioners, as qualified heirs. Petitioner Mary Eileen Stovall answered all of the questions and returned the completed questionnaire to Mr. Hanson, who signed it in his capacity as designated agent. The completed questionnaire was mailed to Mr. Adcock's office with a letter dated January 8, 1988. The letter was received by the District Director at Omaha, Nebraska, on January 11, 1988.

Question 4 on the questionnaire asked and was answered as follows:

4. Are any of the qualified heirs receiving cash rent from their qualified real property, either from another qualified heir or a third party?

Yes (X)    No ( )

If yes, please give amount of cash rent and name and address of tenant.

1980-81–120 ac.    $50 an ac.  –  $6,000 a year
1982-87–120 ac.    $55 an ac.  –  $6,600 a year

Clarence O. Keyes–Springfield, Ne. R.R. 1–68059

The next communication between the parties was a February 7, 1989, letter to Mr. Hanson from Mr. Peter A. Cavanaugh, IRS estate tax attorney in the Omaha District Director's office. Mr. Cavanaugh, who was assigned the case, had reviewed the information dealing with the special use valuation of the property in the Estate of Mary E. Keyes, decedent. The letter from Mr. Cavanaugh requested a conference with petitioners' agent in order to obtain some "addi-

tional information". Mr. Cavanaugh met with petitioners' representatives in March and July 1989 and informed them of the IRS' position that there had been a cessation of qualified use and that additional estate tax was due with interest thereon from December 1980. Prior to these conferences, Mr. Cavanaugh had a telephone conversation with Mr. Keyes, and, in this conversation, Mr. Keyes corroborated the information which had been provided the IRS in the questionnaire filed by petitioner which stated that Mr. Keyes was cash renting the Stovall farm from petitioner. In the conferences between Mr. Cavanaugh and petitioners' representatives, petitioners disputed respondent's position that the cash rental arrangement with Mr. Keyes constituted a cessation of qualified use with respect to petitioners' property.

Thereafter, respondent prepared substitute returns on Form 706-A, U.S. Additional Estate Tax Return, for each of petitioners. None of these substitute returns were ever signed by petitioners. These documents were dated October and November 1989. Attached to each of the substitute returns was an "Explanation of Adjustment" which stated:

In the fall of 1987, the IRS inquired of the individual heirs the use to which this property has been put since the death of Mary Keyes. A review of the taxpayers' individual income tax returns for periods prior to 1988 had indicated that the taxpayers were cash renting farm property. Ms. Stovall responded to the questionnaire submitted by the IRS and indicated that the property has been cash rented to decedent's son Clarence Keyes since 1980. Based on the above, the Government concludes that a cessation of qualified use has occurred resulting in the recapture of tax as set forth under Code section 2032A(c)(2)(A). * * *

Petitioners contested the position of the IRS and followed the IRS appeal procedures by filing protests with the Appeals division. Subsequently, on June 6, 1991, respondent issued the notices of deficiency to the qualified heirs determining deficiencies in additional estate tax due to a cessation of qualified use.

OPINION

Petitioners contend that the period for assessment is barred by the statute of limitations and that there was no cessation of qualified use.

The period of limitations with respect to assessment of additional estate tax attributable to the disposition or cessation of use of qualified real property is set out in section 2032A(f), which provides:

SEC. 2032A(f). STATUTE OF LIMITATIONS.—If qualified real property is disposed of or ceases to be used for a qualified use, then—

(1) The statutory period for the assessment of any additional tax under subsection (c) attributable to such disposition or cessation shall not expire before the expiration of 3 years from the date the Secretary is notified (in such manner as the Secretary may by regulations prescribe) of such disposition or cessation (or if later in the case of an involuntary conversion to which an election under subsection (h) applies, 3 years from the date the Secretary is notified of the replacement of the converted property or of an intention not to replace), and

(2) such additional tax may be assessed before the expiration of such 3-year period notwithstanding the provisions of any other law or rule of law which would otherwise prevent such assessment.

Thus, the prefatory language of section 2032A(f) requires a preliminary finding that the qualified real property "ceases to be used for a qualified use", and, if there is such a finding, the statute requires a finding of "the date the Secretary is notified (in such manner as the Secretary may by regulations prescribe) of such * * * cessation". The 3-year period of limitations begins on the date the Secretary is "notified" of the disposition or cessation of use.

Generally, a decedent's gross estate includes the fair market value of the decedent's interest in all property in which the decedent owned an interest at the time of death. Secs. 2032(a) and 2033. However, in the case of certain real property which was used by the decedent or a member of his family for farming or in a closely held business, section 2032A allows the decedent's personal representative to elect to value the real property on the basis of such property's value as a farm or in the closely held business, rather than the fair market value of such property determined on the basis of highest and best use. Sec. 2032A(e)(7) and (8); *Estate of Strickland v. Commissioner,* 92 T.C. 16, 24 (1989); *Estate of Gunland v. Commissioner,* 88 T.C. 1453, 1454 (1987); sec. 20.2032A-3(a), Estate Tax Regs. The purpose of the special valuation provision is to lessen the estate tax burden and to alleviate the liquidity problems faced by the surviving family of a person who dies owning real property used as a farm or

in a closely held business. H. Rept. 94-1380, at 21-22 (1976), 1976-3 C.B. (Vol. 3) 735, 755-756; S. Rept. 94-938 (Part 2), at 15 (1976), 1976-3 C.B. (Vol. 3) 643, 657. The provision is intended to allow the family to continue operating the farm or other business, rather than being forced to sell the land to pay estate taxes. H. Rept. 94-1380, *supra* at 21-22, 1976-3 C.B. (Vol. 3) at 755-756; S. Rept. 94-938 (Part 2), *supra* at 15, 1976-3 C.B. (Vol. 3) at 657; *Estate of Mapes v. Commissioner,* 99 T.C. 511, 516-517 (1992).

Section 2032A(c)(1)(B) imposes an additional estate tax if, within 15 years after the decedent's death and before the death of the qualified heir, "the qualified heir ceases to use for the qualified use the qualified real property which was acquired (or passed) from the decedent". The term "qualified use" means the devotion of the property to (A) use as a farm for farming purposes, or (B) use in a trade or business other than the trade or business of farming. Sec. 2032A(b)(2)(A) and (B).

"Cessation of qualified use" is defined in section 2032A(c)(7) as follows:

(7) CESSATION OF QUALIFIED USE.—For purposes of paragraph (1)(B), real property shall cease to be used for the qualified use if—

(A) such property ceases to be used for the qualified use set forth in subparagraph (A) or (B) of subsection (b)(2) under which the property qualified under subsection (b), or

(B) during any period of 8 years ending after the date of the decedent's death * * *, there had been periods aggregating 3 years or more during which—

(i) in the case of periods during which the property was held by the decedent, there was no material participation by the decedent or any member of his family in the operation of the farm or other business, and

(ii) in the case of periods during which the property was held by any qualified heir, there was no material participation by such qualified heir or any member of his family in the operation of the farm or other business.

Thus, there are two situations in section 2032A(c)(7) where the cessation of qualified use might occur: (1) If the property ceases to be used for the qualified use (the "use" requirement) under section 2032A(c)(7)(A), or (2) if the "material participation" requirement is not met under section 2032A(c)(7)(B). Cessation occurs if either the property ceases to be used for the qualified use or the heir or his family does

not materially participate in the qualified use. *Martin v. Commissioner,* 783 F.2d 81, 82 (7th Cir. 1986), affg. 84 T.C. 620 (1985). Only the first of these disqualifying events is at issue in this case.

Respondent contends that the leasing of the Stovall farm by petitioner Mary Eileen Stovall to her brother, Mr. Keyes, on a cash basis constituted a cessation of qualified use by the qualified heirs under section 2032A(c)(1)(B), thus creating an obligation for additional estate tax.

In *Williamson v. Commissioner,* 93 T.C. 242 (1989), affd. 974 F.2d 1525 (9th Cir. 1992), this Court held that the cash lease of specially valued farm property by the qualified heir to his nephew constituted a cessation of qualified use. Petitioners disagree with the *Williamson* case and contend that it should be disregarded because the Court based its holding on legislative history enacted after the decedent's death in the instant case, and because this Court, in the *Williamson* case, relied on another case, *Martin v. Commissioner,* 84 T.C. 620 (1985), affd. 783 F.2d 81 (7th Cir. 1986), which petitioners argue was wrongly decided. Petitioners further contend that petitioner, Mrs. Stovall, and her brother operated the farm in accordance with the statutory requirements for qualified use; that Mrs. Stovall participated with her brother in operation of the farm, so that the rental arrangement was not a fixed cash rental; and that respondent's position subverts the intent and purpose of the statute in that the additional estate tax, if held applicable, would force petitioners to sell the farm in order to pay the estate taxes.

In *Shaw v. Commissioner,* T.C. Memo. 1991-372, we considered a similar argument that *Williamson v. Commissioner, supra,* was wrongly decided and found the reasoning and holding of the *Williamson* case to be correct. In so finding, this Court held, in the *Shaw* case, that "petitioner's cash lease of the ranch property to her son is a passive rental activity", and, therefore, "petitioner ceased to use the property for a qualified use" within the meaning of section 2032A(c)(1)(B) and (7)(A). The cash rental (cash lease) agreement in *Shaw v. Commissioner, supra,* was entered into in 1980 as was the arrangement in the instant case between petitioner and her brother. In addition, the basic issue of whether a cash lease causes additional estate tax to be due

was also addressed by this Court in *Fisher v. Commissioner,* T.C. Memo. 1993-139, where it was held that the cash lease of property subject to a special use valuation resulted in a recapture event. In the *Fisher* case the taxpayer's arguments that the rationale of the *Williamson* case should be rejected were found to be without merit. Therefore, we also reject petitioners' arguments with respect to the *Williamson* case.

Petitioners further argue that the rental arrangement with Mr. Keyes was not a mere passive fixed cash rental. In support of this position, they contend that Mrs. Stovall physically participated in the farming operations with her brother, Mr. Keyes. In *Estate of Abell v. Commissioner,* 83 T.C. 696 (1984), it was held that a pure cash rental failed to constitute a (predeath) qualified use under section 2032A because under the lease, the decedent had no "equity interest" in the trade or business being operated on her property by the lessee. "As was the case with several of the heirs herein, the decedent in *Abell* continued to participate in the management, supervision, and operation of the ranch, but such activities failed to overcome her relinquishment of an equity interest in the * * * business (i.e., a qualified use) during the term of and as a result of her cash lease of the property." *Martin v. Commissioner,* 84 T.C. 620, 629 (1985), affd. 783 F.2d 81 (7th Cir. 1986). The Court does not find petitioner's involvement sufficient to change the substance of the arrangement between petitioner and her brother from the passive role of landlord and tenant. *Hight v. Commissioner,* T.C. Memo. 1990-81. Petitioners also argue that there was an "understanding" between petitioner and her brother that, if there was a crop failure, no rent would be due, thus introducing an element of risk on the part of petitioner which would constitute a qualified use. There was no evidence presented to establish any such risk to petitioner. In the 1 year in which there was a crop failure, Mr. Keyes, nevertheless, paid the same amount of cash rental to Mrs. Stovall. There was no written agreement between Mrs. Stovall and her brother setting forth such a risk, and, in the absence of documentation or other evidence establishing a clear risk on the part of Mrs. Stovall, the Court finds petitioners' argument on this point without merit.

Petitioners' final argument in this regard is a prayer for equitable relief. This Court is not a court of equity and does

not have general equitable powers. *Commissioner v. McCoy,* 484 U.S. 3 (1987); *Commissioner v. Gooch Milling & Elevator Co.,* 320 U.S. 418 (1943); *Hays Corp. v. Commissioner,* 40 T.C. 436 (1963), affd. 331 F.2d 422 (7th Cir. 1964). Therefore, the Court finds all of petitioners' arguments on this score unpersuasive and holds that the cash rental arrangement with Mr. Keyes constituted a cessation of qualified use under section 2032A(c)(1)(B).

Having found a cessation of qualified use, we must address the question as to whether the notices of deficiency were issued within the applicable 3-year period of limitations provided in section 2032A(f). Section 2032A(f) is a special statutory provision which prescribes the period of limitations for assessment of additional estate tax when qualified real property for which a special use valuation has been elected under section 2032A is disposed of or ceases to be used for a qualified use. As relates to this case, the period of limitations commences on "the date the Secretary is *notified* (in such manner as the Secretary may by regulations prescribe) of such * * * cessation". (Emphasis added.) The Secretary to date has provided no regulations prescribing the manner in which notification is to be made under section 2032A(f). The question here is whether, as petitioners contend, respondent received "notification" on January 11, 1988, when the appropriate IRS office received the answered questionnaire from petitioners which contained information that there had been a cessation of use by petitioners of the qualified estate property. Since the notices of deficiency were issued June 6, 1991, beyond the 3-year period measured from the date of such notification, petitioners contend respondent is barred from assessment and collection of the additional estate tax. Whether the answered questionnaire constituted "notification" is an issue of first impression.

Respondent asserts that the period of limitations had not expired at the time the notices of deficiency were issued because: (1) The returned questionnaire did not constitute "notification" for purposes of section 2032A(f); (2) respondent did not determine that a cessation of use had occurred based solely on such questionnaire; (3) the notices of deficiency were issued within 3 years from the date petitioners were notified of respondent's position that there was a cessation of qualified use; and (4) for purposes of section 2032A(f),

"notification" is accomplished by the taxpayer's filing of a Form 706-A, U.S. Additional Estate Tax Return, in which the cessation of qualified use is disclosed, and the additional estate tax is paid.

Since the Secretary has never promulgated regulations specifying what constitutes "notification" within the intent and meaning of section 2032A(f), and since the statute provides no further guidance, the Court looks to other sections of the Code in which "notification" to the Secretary is necessary for one reason or another, and where regulations have been promulgated under such Code sections, to determine whether the facts here constitute "notification" for purposes of section 2032A(f).

Under section 1033(a), relating to the nonrecognition of gain upon an involuntary conversion, section 1033(a)(2)(C)(i) provides that the statutory period for assessment of a deficiency attributable to gain realized on a conversion "shall not expire prior to the expiration of 3 years from the date the Secretary is notified by the taxpayer (in such manner as the Secretary may by regulations prescribe) of the replacement of the converted property or of an intention not to replace". As to the manner of notification, the relevant regulation is section 1.1033(a)-2(c)(5), Income Tax Regs., which requires that the "notification shall *contain all of the details* in connection with such replacement." (Emphasis added.) This notification is to be *filed with the District Director* before the time or at the time the taxpayer's annual income tax return is filed with such District Director.

Section 1034(j), relating to the deferment of gain on the sale of a principal residence, provides:

SEC. 1034(j). STATUTE OF LIMITATIONS.—If the taxpayer during a taxable year sells at a gain property used by him as his principal residence, then—

(1) the statutory period for the assessment of any deficiency attributable to any part of such gain shall not expire before the expiration of 3 years from the date the Secretary is notified by the taxpayer (in such manner as the Secretary may by regulations prescribe) of—

(A) the taxpayer's cost of purchasing the new residence which the taxpayer claims results in nonrecognition of any part of such gain,

(B) the taxpayer's intention not to purchase a new residence within the period specified in subsection (a), or

(C) a failure to make such purchase within such period; and

As to the manner of notification, the relevant part of the regulation promulgated thereunder is section 1.1034-1(i)(1), Income Tax Regs., which provides that the statutory period for assessment "shall not expire prior to the expiration of three years from the *date of receipt, by the district director with whom the return was filed* for the taxable year or years in which gain from the sale of the old residence was realized (section 1034(j)), of a *written notice* from the taxpayer of" the information required by section 1033(j)(1)(A), (B), and (C). (Emphasis added.)

The language of sections 1033(a) and 1034(j), with respect to notification, is almost identical to the notification language of section 2032A(f). The regulations under sections 1033(a) and 1034(j) do not prescribe or require the use of an IRS form or return for purposes of notification to the District Director. For purposes of section 2032A(f), the IRS has issued questionnaires to affected taxpayers, as occurred in this case, which relate directly to whether the requirements of section 2032A were being met. In sending the questionnaire to petitioners' designated agent, the letter accompanying the questionnaire stated that the purpose of the questionnaire was "To assist this office in evaluating the qualified heirs' compliance under Section 2032A(c)". Petitioners truthfully and completely answered the questionnaire, which their agent returned, as requested, to the District Director's office with which the original estate tax return was filed. The information clearly disclosed the cash rental of the property by petitioner's brother, Mr. Keyes. Based on this information, respondent made further inquiries, scheduled conferences with petitioners' representatives, confirmed the verity of the information on the questionnaire, and took the position that a cessation of qualified use had occurred. All of this information relates to the information contained on the answered questionnaire.

The Court finds significant, and respondent admits, that section 2032A(f) requires *notification* and does not require the filing of a *return*. This is in contrast to section 6501, the general limitations statute, which provides that, to begin the period of limitations, a return must be filed. It is safe to conclude, therefore, that, under section 2032A(f), in the absence of regulations to the contrary, notification may be made by means other than the filing of a return, such as Form 706-A, U.S. Additional Estate Tax Return. Therefore, the Court

finds unpersuasive respondent's argument that petitioners were required to file Form 706-A to accomplish the required notification under section 2032A(f).

We also find without merit respondent's argument that, since the notices of deficiency were issued within 3 years from the date petitioners were notified of respondent's position, they were timely issued. We fail to see the logic in such argument when the statute refers to the date the "Secretary is notified" of the cessation and not the date the taxpayers are notified of respondent's position.

Under the general IRS procedures, Special Use Valuation Questionnaires of the type used in this case are commonly used to determine whether there has been a cessation of qualified use. Respondent elicits, through the questions propounded, the factual information from which it can be determined whether there was a cessation of qualified use. The questionnaire in this case was issued from and returned to the IRS office whose responsibility it was to make the determination whether the property continued to be used in a qualified use under section 2032A. The answers to the question were factually complete, signed by the designated agent, and directed to the same District Director's office where the corresponding estate tax return was originally filed. The information necessary for a determination, such as the fair market and special use values of the property, is contained in the Form 706, U.S. Estate Tax Return, available to the office issuing the questionnaire, except for the factual information as to how the farm was currently operated.

Respondent asserts that the information provided by petitioners in the questionnaire does not constitute "notification" because there is no language declaring that the document is "Notification of Cessation of Use". This argument lacks merit. The questionnaire, drafted by respondent, sought only factual information and did not request that petitioners attempt to draw a conclusion as to what the legal consequences were of the facts presented therein. Failure to assert the legal consequences of the facts presented cannot be a defect fatal to the validity of an otherwise sufficient notice. In fact, petitioners never agreed to the legal conclusions drawn by respondent that there had been a cessation of qualified use. In an analogous situation, when a "return" is required to begin the period of limitations, the document

is still a return to begin the running of such period, even though the taxpayer and the Commissioner disagree as to the correct legal treatment of certain items on the document, if the facts supporting those items are adequately disclosed. Compare *Germantown Trust Co. v. Commissioner,* 309 U.S. 304, 308 (1940) with *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 188 (1957). Consequently, when "notification" is required to begin the period of limitations, the document can still be notification for this purpose, even though the taxpayer and the Commissioner disagree as to the correct legal consequences of facts disclosed therein.

In support of respondent's position that the information provided in the questionnaire did not constitute notification, it is argued that the determination of cessation of use was not based *solely* on the questionnaire. This argument is not supported by the record. The "Explanation of Adjustment" prepared by the examining IRS estate tax attorney in October or November 1989 stated that the Government's conclusion that there was a cessation of qualified use was based upon information provided by petitioner through the questionnaire and corroborated by a review of the taxpayers' individual income tax returns. The record does not show that respondent acquired any new factual information which was not otherwise provided in the questionnaire. Respondent's further investigations and conferences only verified the information which respondent already had. The examination procedure appeared to be similar to the audit of an income tax return. When an income tax return is verified through audit and a notice of deficiency is later issued, the fact that information contained in the return is corroborated through other sources does not affect the period of limitations. Therefore, respondent's argument on this point is unpersuasive.

Based on the foregoing analysis, the Court concludes that respondent was "notified" under section 2032A(f) of petitioners' cessation of qualified use when the completed questionnaire was received by the District Director's office where the original Form 706, U.S. Estate Tax Return, was filed. Consequently, the 3-year period of limitations of section 2032A(f) commenced on January 11, 1988, and expired on January 11, 1991. The Court holds that the notices of deficiency dated June 6, 1991, were issued beyond the period of limitations,

and, therefore, respondent is barred from assessing and collecting additional estate taxes.

*Decisions will be entered for petitioners.*