142 T.C. No. 4

UNITED STATES TAX COURT

LAW OFFICE OF JOHN H. EGGERTSEN P.C., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15479-11.                    Filed February 12, 2014.

During its taxable year 2005, P, an S corporation, maintained an employee stock ownership plan. R determined that 2005 was a "nonallocation year" within the meaning of I.R.C. sec. 409(p)(3)(A) with respect to that plan and that I.R.C. sec. 4979A imposes a Federal excise tax on P for that taxable year.

Held: I.R.C. sec. 4979A(a) imposes a Federal excise tax on P for its taxable year 2005.

Held, further, the period of limitations under I.R.C. sec. 4979A(e)(2)(D) for assessing that tax has expired.

Stephen Wasinger, for petitioner.

John W. Stevens and Shawn P. Nowlan, for respondent.

## OPINION

CHIECHI, <u>Judge</u>:  Respondent determined a deficiency under section 4979A(a)[1] in, and an addition under section 6651(a)(1) to, petitioner's Federal excise tax (excise tax) of $200,750 and $50,187.50, respectively, for petitioner's taxable year 2005.

The issues remaining for decision for P's taxable year 2005 are:

(1) Does section 4979A(a) impose an excise tax on petitioner?  We hold that it does.

(2) Has the period of limitations under section 4979A(e)(2)(D) expired for assessing the excise tax that section 4979A(a) imposes on petitioner?  We hold that it has.

## Background

All of the facts in this case, which the parties submitted under Rule 122, have been stipulated by the parties and are so found.

Petitioner, an S corporation, had its principal place of business in Michigan at the time it filed the petition.

---

[1]All section references are to the Internal Revenue Code (Code) in effect for the year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

On January 1, 1998, John H. Eggertsen (Mr. Eggertsen) purchased for $500 all 500 shares of the outstanding stock of J & R's Little Harvest, Inc. (J & R's Little Harvest).

On January 1, 1999, J & R's Little Harvest established an employee stock ownership plan (ESOP) known as the J & R's Little Harvest Employee Stock Ownership Plan (J & R's Little Harvest ESOP). On December 10, 1999, Mr. Eggertsen transferred the 500 shares of stock of J & R's Little Harvest that he had purchased on January 1, 1998, to J & R's Little Harvest ESOP.

On a date not established by the record, J & R's Little Harvest changed its name to Law Office of John H. Eggertsen P.C.

Effective on January 1, 2002, the trust agreement for J & R's Little Harvest ESOP was amended to provide, inter alia: (1) "All references in the Trust Agreement to 'J & R's Little Harvest, Inc.' shall mean Law Office of John H. Eggertsen, P.C.", and (2) "All references in the Trust Agreement to 'J & R's Little Harvest Employee Stock Ownership Plan' shall mean Law Office of John H. Eggertsen, P.C. ESOP."[2]

---

[2]We shall refer to J & R's Little Harvest ESOP, the trust agreement for which was amended effective on January 1, 2002, as the ESOP in question.

At all relevant times, 100% of the stock of petitioner was allocated to Mr. Eggertsen under the ESOP in question. The ESOP in question held until June 30, 2005, the stock allocated to Mr. Eggertsen in an account known as a "Company Stock Account". Thereafter, the ESOP in question held 100% of the stock of petitioner allocated to Mr. Eggertsen in an account known as an "Other Investment Account".

Around April 26, 2006, petitioner filed Form 1120S, U.S. Income Tax Return for an S Corporation, for its taxable year 2005 (2005 Form 1120S). Petitioner attached to that form Schedule K-1, Shareholder's Share of Income, Deductions, Credits, etc.

In petitioner's 2005 Form 1120S, petitioner showed, inter alia, that during 2005 the ESOP owned 100% of the stock of petitioner.

On a date not established by the record during 2006, the ESOP in question filed Form 5500, Annual Return/Report of Employee Benefit Plan (employee benefit plan 2005 annual return), for its taxable year 2005. The ESOP in question attached to that form Schedule E, ESOP Annual Information. The ESOP in question also attached to the employee benefit plan 2005 annual return Schedule I, Financial Information--Small Plan, and Schedule SSA, Annual Registration Statement Identifying Separated Participants With Deferred Vested Benefits.

In the employee benefit plan 2005 annual return, the ESOP in question showed that (1) its effective date was January 1, 1999; (2) it was maintained by petitioner during 2005; (3) it had three participants during 2005, two of whom were not identified and were described as "Active participants" and one of whom was identified as Kerry C. Duggan and described as "Other retired or separated participants entitled to future benefits"; (4) it held assets at the end of 2005 valued at $401,500; and (5) its assets consisted exclusively of "Employer securities".

On a date not established by the record, the ESOP in question filed an amended Form 5500 (amended employee benefit plan 2005 annual return) for its taxable year 2005. The ESOP in question attached to that form Schedule I.

In the amended employee benefit plan 2005 annual return, the ESOP in question showed information that was identical in most respects to the information that it had showed in the employee benefit plan 2005 annual return, except that (1) the ESOP in question did not identify in the amended employee benefit plan 2005 annual return the individual described in that return as "Other retired or separated participants entitled to benefits", and (2) the ESOP in question showed in the amended employee benefit plan 2005 annual return that it held assets at the end of 2005 valued at $868,833, which included "Employer securities" valued at that yearend at $401,500. The ESOP in question was not required to, and did not,

describe in the amended employee benefit plan 2005 annual return any of the other assets that it held at the end of 2005 and their respective yearend values.[3]

Petitioner did not file Form 5330, Return of Excise Taxes Related to Employee Benefit Plans (Form 5330), for its taxable year 2005. Respondent filed a substitute for Form 5330 for petitioner for that taxable year. That substitute for Form 5330 did not contain any entries except those for "Filer tax year beginning" and "ending", "Name of filer", address of filer, "Filer's identifying number", "Name of plan", "Name and address of plan sponsor", "Plan sponsor's EIN", "Plan year ending", and "Plan number".

On April 14, 2011, respondent issued to petitioner a notice of deficiency (notice) with respect to petitioner's taxable year 2005. In that notice, respondent determined, inter alia:

> **IRC section 4979A Excise Tax**
> For the plan year ending December 31, 2005, Mr. John Eggertsen is a disqualified person, under Section 409(p)(4) of the Law Office of John H Eggertsen P. C. Employee Stock Ownership Plan. As a result, a non-allocation year has occurred under Internal Revenue Code (IRC) section 409(p)(3).

---

[3]The amended employee benefit plan 2005 annual return required the ESOP in question to disclose only certain assets specified in that return that it held at the end of 2005, including "Employer securities", and the respective yearend values of any such assets. The ESOP in question was not required to disclose in that return all of the assets that it held at the end of 2005 and the respective yearend values of all of those assets.

Under IRC section 4979[A](e)(2)(C), all the deemed owned shares of all the disqualified persons with respect to the Law Office of John H Eggertsen P. C. Employee Stock Ownership Plan are taken into account for determining the amount involved in the prohibited allocation. The amount of the prohibited allocation in this case is $401,500.00. Under IRC section 4979A, Law Office of John H Eggertsen P. C. is subject to a 50% excise tax for the tax year ending December 31, 2005 on the amount of the prohibited allocation. Accordingly, Law Office of John H Eggertsen P. C. is liable for the IRC section 4979A excise tax in the amount of to $200,750.00.

## Discussion

Petitioner bears the burden of establishing that the determinations in the notice that remain at issue are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). That this case was submitted fully stipulated does not change that burden or the effect of a failure of proof. See Rule 122(b); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), aff'd, 943 F.2d 22 (8th Cir. 1991).

We must decide (1) whether section 4979A(a) imposes an excise tax on petitioner for its taxable year 2005 and (2) if so, whether the period of limitations under section 4979A(e)(2)(D) has expired for assessing that tax for that year.

We turn first to whether section 4979A(a) imposes an excise tax on petitioner for its taxable year 2005. According to petitioner, it does not. In support of that position, petitioner argues:

IRC §4979A(a), captioned "Imposition of Tax," includes four clauses before the taxing clause. Only one is relevant to this case: Section 4979A(a)(3). The relevant language is:

> If -- * * * (3) there is any allocation of employer securities which violates the provisions of section 409(p) [*IRC §409(p)*], or a nonallocation year described in subsection (e)(2)(C) with respect to an employee stock ownership plan. . . .

Following these four clauses, the taxing clause of §4979A(a) then states:

> there is hereby imposed **a tax on such allocation or ownership**[4] equal to 50 percent of the amount involved. * * *

The critical point: although §4979A(a)(3) refers to a "nonallocation year," the taxing provision in §4979A(a) does not include a "nonallocation year." The taxing provision only imposes the tax on an "allocation" or "ownership." * * *

IRC §4979A(c)(2) provides that the tax imposed by this section shall be paid "by the S corporation the stock in which was **so allocated or owned**." * * *

Thus, not only the taxing provision of §4979A(a) but also §4979A(c)(2)--which defines the person liable for the tax imposed by §4979A(a)--clearly establishes that there must be an allocation in violation of §409(p) in 2005 to create liability for Petitioner.

---

[4]The word "ownership" refers to IRC §4979A(a)(4), dealing with the ownership of a synthetic equity, which is not applicable. [Reproduced literally.]

Section 4979A(a) provides:

> SEC. 4979A(a).  Imposition of Tax.--If--
>
> (1) there is a prohibited allocation of qualified securities by any employee stock ownership plan or eligible worker-owned cooperative,
>
> (2) there is an allocation described in section 664(g)(5)(A),
>
> (3) there is any allocation of employer securities which violates the provisions of section 409(p), or a nonallocation year described in subsection (e)(2)(C) with respect to an employee stock ownership plan,[4] or

---

[4]Petitioner and respondent agree that the phrase "nonallocation year described in subsection (e)(2)(C) with respect to an employee stock ownership plan" to which sec. 4979A(a)(3) refers means the first nonallocation year with respect to an employee stock ownership plan.  For purposes of sec. 4979A, sec. 4979A(e)(1) adopts the definition of "nonallocation year" in sec. 409.  Sec. 409(p)(3)(A) defines the term "nonallocation year" to mean "any plan year of an employee stock ownership plan if, at any time during such plan year * * * such plan holds employer securities consisting of stock in an S corporation, and * * * disqualified persons own at least 50 percent of the number of shares of stock in the S corporation."  As pertinent here, sec. 409(p)(4)(A)(ii) defines the term "disqualified person" in sec. 409(p)(3) to mean any person if "the number of deemed-owned shares of such person is at least 10 percent of the number of deemed-owned shares of stock in * * * [the S] corporation."  For purposes of sec. 409(p)(3), "an individual shall be treated as owning deemed-owned shares of the individual."  Sec. 409(p)(3)(B)(ii).  The term "deemed-owned shares" means, with respect to any person, "the stock in the S corporation constituting employer securities of an employee stock ownership plan which is allocated to such person under the plan" and "such person's share of the stock in such corporation which is held by such plan but which is not allocated under the plan to participants."  Sec. 409(p)(4)(C)(i).

(4) any synthetic equity is owned by a disqualified
person in any nonallocation year,

there is hereby imposed a tax on such allocation or ownership equal
to 50 percent of the amount involved.

Neither party maintains that during 2005 any of the events that are described in section 4979A(a)(1), (2), and (4) and that trigger imposition of the excise tax under section 4979A(a) occurred. Moreover, the parties do not dispute that during 2005 there was no "allocation of employer securities which violates the provisions of section 409(p)", one of the two events that is described in section 4979A(a)(3) and that triggers imposition of the excise tax under section 4979A(a). The parties dispute whether the occurrence of the second event, i.e., the occurrence of a "nonallocation year described in subsection (e)(2)(C) with respect to an employee stock ownership plan", that is described in section 4979A(a)(3) triggers imposition of the excise tax under section 4979A(a).

As we understand petitioner's position, petitioner acknowledges that 2005 is a nonallocation year within the meaning of section 409(p)(3)(A)[5] with respect to the ESOP in question. What petitioner fails or refuses to acknowledge is that there cannot be a nonallocation year within the meaning of section 409(p)(3)(A) unless

---

[5]See supra note 4. As discussed infra, petitioner does not acknowledge that 2005 is a nonallocation year described in sec. 4979A(e)(2)(C) with respect to the ESOP in question.

"disqualified persons <u>own</u> at least 50 percent of the number of shares of stock in the S corporation." Sec. 409(p)(3)(A)(ii) (emphasis added). Thus, there must be "ownership" by "disqualified persons" of "at least 50 percent of the number of shares of stock in the S corporation" in order for there to be a "nonallocation year" with respect to an employee stock ownership plan. We conclude that the occurrence of a "nonallocation year described in subsection (e)(2)(C) with respect to an employee stock ownership plan" that is described in section 4979A(a)(3) triggers imposition of the excise tax under section 4979A(a) on any such "ownership" by disqualified persons.

Our conclusion is supported not only by the applicable sections of the Code but also by the legislative history of section 4979A(a). Section 656(c)(1)(A) and (B) of the Economic Growth and Tax Relief Reconciliation Act of 2001 (EGTRRA), Pub. L. No. 107-16, 115 Stat. at 134, amended section 4979A by, inter alia, adding references to "ownership" to section 4979A(a) and (c). The conference report accompanying that Act states as follows under the caption "<u>Application of excise tax</u>": "A special rule applies in the case of the first non-allocation year, regardless of whether there is a prohibited allocation. In that year, the excise tax also applies to the fair market value of the deemed-owned shares of any disqualified person held by the ESOP, even though those shares are not

allocated to the disqualified person in that year." H.R. Conf. Rept. No. 107-84, at

276 (2001), 2001-3 C.B. 123, 399.

Petitioner argues that even if we were to conclude, which we have, that

section 4979A(a) imposes an excise tax where there is a "nonallocation year de-

scribed in subsection (e)(2)(C) with respect to an employee stock ownership plan",

2005 is not the nonallocation year described in that subsection with respect to the

ESOP in question. In this connection, as discussed supra note 4, petitioner and

respondent agree that the phrase "nonallocation year described in subsection

(e)(2)(C) with respect to an employee stock ownership plan" in section

4979A(a)(3) means the first nonallocation year with respect to an employee stock

ownership plan. According to petitioner, 1999, not 2005, is the first nonallocation

year with respect to the ESOP in question. In support of that position, petitioner

asserts:

> **C.** **Assuming An Excise Tax Could Be Imposed**
> **Merely By Holding** [i.e., owning] **Shares, The**
> **First Nonallocation Year Was 1999, Not 2005**
>
> IRC §4979A does not define "**first** nonallocation year." * * *
> But §4979A does incorporate by reference the definition of "nonallo-
> cation year" found in §409(p)(3) * * *
>
> *   *   *   *   *   *   *

Applying that definition, the ESOP had its first "nonallocation year" in 1999 when 100% of the ESOP stock was allocated to the account of Mr. Eggertsen, who was a "disqualified person." * * *

Each plan year after 1999, until June 30, 2005, was also a "nonallocation year," because 100% of the stock continued to be allocated to Mr. Eggertsen, who continued to be a "disqualified person."

\*         \*         \*         \*         \*         \*         \*

Thus, if any excise tax is due under the Respondent's theory of this case, it is with respect to 1999, not 2005.

Section 656 of the EGTRRA, inter alia, (1) added to the Code (a) section 4979A(a)(3), which imposes an excise tax upon, inter alia, the occurrence of a "nonallocation year described in subsection (e)(2)(C) with respect to an employee stock ownership plan", (b) section 4979A(e)(2)(C), which provides that "the amount involved for the first nonallocation year of any employee stock ownership plan shall be determined by taking into account the total value of all the deemed-owned shares of all disqualified persons with respect to such plan", and (c) section 409(p)(3)(A), which defines the term "nonallocation year"; and (2) modified section 4979A(e)(1), which defines the term "nonallocation year" by reference to section 409(p)(3)(A).  Section 656(d)(1) of the EGTRRA provides that the effective date for those and certain other sections that section 656 of the EGTRRA modified or added to the Code is "plan years beginning after December 31, 2004."

EGTRRA, Pub. L. No. 107-16, sec. 656(d)(1), 115 Stat. at 135. We conclude that the first nonallocation year, i.e., the nonallocation year described in section 4979A(e)(2)(C), with respect to the ESOP in question to which section 4979A(a)(3) applies is 2005.[6]

The parties agree that at all relevant times, including during 2005, (1) all of the stock of petitioner was allocated to Mr. Eggertsen under the ESOP in question, and (2) Mr. Eggertsen was a "disqualified person". The parties also agree that 2005 is a nonallocation year within the meaning of section 409(p)(3)(A) with respect to the ESOP in question. On the record before us, we conclude that at all relevant times, including during 2005, a "disqualified person", i.e., Mr. Eggertsen, owned all of the stock of petitioner.[7] On that record, we further conclude that section 4979A(a) imposes an excise tax on petitioner for its taxable year 2005, the first nonallocation year with respect to the ESOP in question, on that ownership of all of that stock. See sec. 4979A(a)(3).

---

[6]Sec. 656(d)(1) of the EGTRRA, Pub. L. No. 107-16, 115 Stat. at 135, provides that the effective date for secs. 4979A(a)(3), (e)(1), and (2)(C) and 409(p)(3)(A) and certain other sections that sec. 656 of the EGTRRA modified or added to the Code is "plan years ending after March 14, 2001", for plans established after that date. The ESOP in question was not established after March 14, 2001; it was established in 1999.

[7]See supra note 4.

We turn now to the statute of limitations issue. Respondent issued the notice to petitioner on April 14, 2011. The period for the assessment of any tax imposed by section 4979A(a) "shall not expire before the date which is 3 years from the later of * * * the * * * ownership referred to in such paragraph giving rise to such tax, or * * * the date on which the Secretary [of the Treasury] is notified of such * * * ownership." Sec. 4979A(e)(2)(D).

We must decide whether respondent issued the notice to petitioner before or after the date that is three years from the later of the ownership that gives rise to the excise tax under section 4979A(a) or the date on which respondent was "notified" of such ownership. See id. If the notice was issued before, the period of limitations under section 4979A(e)(2)(D) has not expired. If the notice was issued after, it has.

The ownership in the present case that gives rise to the excise tax under section 4979A(a) for petitioner's taxable year 2005 existed on the first day of 2005 and throughout that year. In order to determine the period of limitations under section 4979A(e)(2)(D) that applies here, we must also determine (1) whether respondent was "notified" of that ownership, (2) if respondent was so "notified", when respondent was "notified", and (3) whether the date on which respondent

was so "notified" was later than the ownership that gives rise to the excise tax under section 4979A(a).

Section 4979A(e)(2)(D) does not define the term "notified", and the Secretary has not promulgated regulations under that section defining that term. Nor does the legislative history of section 4979A(e)(2)(D) provide guidance as to the meaning of the term "notified" in that section.

In Stovall v. Commissioner, 101 T.C. 140 (1993), we had to consider, as we must do in the instant case, the meaning of the term "notified" in a section[8] that did not define that term, with respect to which the Secretary had not promulgated regulations, and with respect to which the legislative history did not provide guidance. Section 2032A(f)(1) involved in Stovall provides in pertinent part that if qualified real property ceases to be used for a qualified use, "[t]he statutory period for the assessment of any additional tax under subsection (c) [of section 2032A] attributable to such * * * cessation shall not expire before the expiration of 3 years from the date the Secretary is notified (in such manner as the Secretary may by regulations prescribe) of such * * * cessation". Although in Stovall, as in the instant case, the Secretary had not promulgated regulations defining the term

_____

[8]The section involved in Stovall v. Commissioner, 101 T.C. 140 (1993), was sec. 2032A(f)(1), which prescribed the period of limitations for assessment of the additional tax imposed by sec. 2032A.

"notified" in the section involved in that case, see Stovall v. Commissioner, 101 T.C. at 151, the Secretary had promulgated respective regulations under section 1033(a), relating to the deferral of gain on an involuntary conversion, and section 1034(j)(1),[9] relating to the deferral of gain on the sale of a primary residence, that prescribed the respective periods of limitations under those sections and that began the running of those periods when the Secretary was "notified". We concluded in Stovall that it was appropriate to use the respective regulations under sections 1033(a) and 1034(j)(1), which provided guidance as to the meaning of the term "notified" in those sections, as guidance in determining whether the Secretary was "notified" under section 2032A(f)(1) that qualified real property ceased to be used for a qualified use. See Stovall v. Commissioner, 101 T.C. at 151.

We conclude here, as we did in Stovall, that it is appropriate to use the regulations under section 1033(a) as guidance in determining whether the Secretary was "notified" under section 4979A(e)(2)(D) of the ownership that gives rise to the excise tax under section 4979A(a).[10]

---

[9]Sec. 1034 was repealed effective May 6, 1997. See Taxpayer Relief Act of 1997, Pub. L. No. 105-34, sec. 312 (b), (d), 111 Stat. at 839, 841.

[10]We shall not use the regulations under sec. 1034 as guidance since that section was repealed effective May 6, 1997. See supra note 9.

Section 1.1033(a)-2(c)(5), Income Tax Regs., which addresses the meaning of the term "notified" in section 1033(a), indicates that any deficiency attributable to section 1033(a)(2) "may be assessed at any time before the expiration of three years from the date the district director with whom the return for such year has been filed is notified by the taxpayer of the replacement of the converted property or of an intention not to replace, or of a failure to replace, within the required period". That regulation also provides that if involuntarily converted property is replaced, "notification shall contain all of the details in connection with" such replacement and is to be filed with the District Director before the time or at the time the taxpayer's annual income tax return is filed.

We shall examine the record before us in order to determine whether respondent was notified of all of the details necessary for respondent to conclude that during 2005 one or more disqualified persons owned at least 50% of all of the stock of petitioner and that that year is the first nonallocation year with respect to the ESOP in question. The record contains the 2005 Form 1120S that petitioner filed around April 26, 2006, the employee benefit plan 2005 annual return that the ESOP in question filed on a date not established by the record during 2006, and the amended employee benefit plan 2005 annual return that the ESOP in question

filed on a date not established by the record.[11]  We consider only the 2005 Form 1120S and the employee benefit plan 2005 annual return in order to determine whether those returns contained all of the details necessary for respondent to conclude that during 2005 one or more disqualified persons owned at least 50% of all of the stock of petitioner and that that year is the first nonallocation year with respect to the ESOP in question.[12]

The information contained in the 2005 Form 1120S and the information contained in the employee benefit plan 2005 annual return provided, inter alia, the following details to respondent about the ESOP in question:  (1) the effective date of the ESOP in question was January 1, 1999; (2) during 2005 petitioner maintained the ESOP in question; (3) during 2005 the ESOP in question (a) held 100%

---

[11]The record does not establish the respective IRS offices with which petitioner filed the 2005 Form 1120S and the ESOP in question filed the employee benefit plan 2005 annual return and the amended employee benefit plan 2005 annual return.  Respondent does not contend that any of those returns was filed with the wrong IRS office.

[12]We shall not consider the amended employee benefit plan 2005 annual return in determining whether respondent was notified of all of the details necessary for respondent to conclude that during 2005 one or more disqualified persons owned at least 50% of all of the stock of petitioner and that that year is the first nonallocation year with respect to the ESOP in question.  That is because the record does not establish when that return was filed.  We note that the information that the ESOP in question showed in the amended employee benefit plan 2005 annual return is identical in all material respects to the information that it showed in the employee benefit plan 2005 annual return.

of the stock of petitioner valued at $401,500 and (b) had three participants.[13]

Because respondent knew that the effective date of the ESOP in question was

January 1, 1999, we find that respondent necessarily also knew that the first year

to which section 4979A(a)(3) was applicable with respect to the ESOP in question

was 2005. See EGTRRA sec. 656(d)(1). We further find that respondent also

necessarily knew that 2005 was the year that would give rise to the excise tax

under section 4979A(a) that is attributable to the occurrence of a nonallocation

year as provided in section 4979A(a)(3) if that year was a "nonallocation year"

within the meaning of section 4979A(e)(1)[14] with respect to the ESOP in question.

That is because, as discussed above, 2005 would be "a nonallocation year

---

[13]In the 2005 Form 1120S, petitioner showed, inter alia, that during 2005 the ESOP in question owned 100% of the stock of petitioner. In the employee benefit plan 2005 annual return, the ESOP in question showed that (1) its effective date was January 1, 1999; (2) it was maintained by petitioner during 2005; (3) it had three participants during 2005, two of whom were not identified and were described as "Active participants" and one of whom was identified as Kerry C. Duggan and described as "Other retired or separated participants entitled to future benefits"; (4) it held assets at the end of 2005 valued at $401,500; and (5) its as-sets consisted exclusively of "employer securities". The employee benefit plan 2005 annual return did not show whether or how the assets that the ESOP in question held during 2005 were allocated among the three participants in that ESOP during that year.

[14]See supra note 4.

described in subsection (e)(2)(C)" of section 4979A, i.e., the first "nonallocation year" with respect to the ESOP in question.

On the record before us, we find that respondent necessarily knew that 2005 was a nonallocation year within the meaning of section 4979A(e)(1) with respect to the ESOP in question. That is because respondent knew from the information contained in the 2005 Form 1120S and the information contained in the employee benefit plan 2005 annual return that during 2005 the ESOP in question held all of the stock of petitioner. Consequently, we find that respondent necessarily also knew that one, two, or all three of the participants in that ESOP during that year were deemed to own part or all of that stock. See secs. 4979A(e)(1), 409(p)(4)(C). Accordingly, we find that, regardless of whether one, two, or all three of those participants were deemed to own all of the stock of petitioner that the ESOP in question held during 2005, respondent necessarily knew (1) that during 2005 one or more of those participants owned at least 10% of the stock of petitioner and (2) that during 2005 one or more disqualified persons owned at least 50% of the stock of petitioner. See secs. 4979A(e)(1), 409(p)(3)(A), (B), (4)(A), (C).

On the record before us, we find that the information contained in the 2005 Form 1120S and the information contained in the employee benefit plan 2005 annual return provided all of the details necessary for respondent to conclude that

during 2005 one or more disqualified persons owned at least 50% of all of the stock of petitioner and that that year was the first nonallocation year with respect to the ESOP in question. On that record, we further find that the 2005 Form 1120S and the employee benefit plan 2005 annual return notified the Secretary under section 4979A(e)(2)(D) of the ownership that gives rise to the excise tax under section 4979A(a).

We turn next to when the Secretary was notified under section 4979A(e)(2)(D) of the ownership that gives rise to the excise tax under section 4979A(a). Petitioner filed the 2005 Form 1120S around April 26, 2006. The ESOP in question filed the employee benefit plan 2005 annual return on a date not established by the record during 2006. Information contained in both of those returns provided all of the details necessary for respondent to conclude that during 2005 one or more disqualified persons owned at least 50% of all of the stock of petitioner and that that year was the first nonallocation year with respect to the ESOP in question. Although the record does not establish when in 2006 the ESOP in question filed the employee benefit plan 2005 annual return, as discussed above, the ownership that gives rise to the excise tax under section 4979A(a) for petitioner's taxable year 2005 existed on the first day of 2005 and throughout that year.

On the record before us, we find that the date on which the Secretary was notified under section 4979A(e)(2)(D) of the ownership that gives rise to the excise tax under section 4979A(a) for petitioner's taxable year 2005 was later than that ownership. On that record, we further find that the period of limitations under section 4979A(e)(2)(D) for assessing that excise tax expired on a date in 2009 that is not established by the record. Respondent did not issue the notice to petitioner until April 14, 2011, which was after that period of limitations under section 4979A(e)(2)(D) had expired.

Based upon our examination of the entire record before us, we find that the period of limitations under section 4979A(e)(2)(D) has expired for assessing the excise tax that section 4979A(a) imposes on petitioner for its taxable year 2005.

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing and a concession of respondent,

<u>Decision will be entered for</u>

<u>petitioner</u>.