T.C. Memo. 2019-44

UNITED STATES TAX COURT

TIMOTHY TODD FISHER AND CHRISTINA FISHER, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9201-17.                    Filed April 30, 2019.

Timothy Todd Fisher and Christina Fisher, pro sese.

A. Gary Begun, Randall Childs, and Mark J. Tober, for respondent.

MEMORANDUM OPINION

VASQUEZ, Judge: This case is before the Court on respondent's motion

for summary judgment.[1]  The issue for decision is whether petitioners' tax liability

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year at issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

[*2] must increase by the amount of the advance premium assistance tax credit (PTC) that was applied against petitioner wife's monthly health insurance premium. Because petitioners' income exceeded 400% of the amount of the Federal poverty line (FPL), she was not entitled to the credit, and we will grant respondent's motion for summary judgment.

## Background

The following facts are based on the parties' pleadings, motion papers, and stipulation of facts, including the exhibits attached thereto. See Rule 121(b). Petitioners resided in Florida when they timely filed their petition.

In December 2014 petitioner Christina Fisher submitted an application to the Health Insurance Marketplace (Exchange). Mrs. Fisher purchased a health insurance policy through the Exchange after it determined that she was eligible for an advance PTC[2] of $371 per month for a total annual credit of $4,452. The Exchange applied the advance PTC to her monthly health insurance premium beginning January 1, 2015, before she married petitioner Timothy Fisher.

Mrs. Fisher was unmarried during the first 10-1/2 months of 2015. Mrs. Fisher had a dependent child who lived with her before and after she married Mr.

---

[2]This credit is a subsidy created by the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010).

**[*3]** Fisher. Petitioners married on November 14, 2015. Mrs. Fisher's health insurance policy remained in effect until December 31, 2015. Mr. Fisher did not have a health insurance policy through the Exchange for 2015.

Petitioners timely filed a joint income tax return for tax year 2015 reporting adjusted gross income (AGI) of $113,975 and claiming one dependent. Petitioners did not attach Form 8962, Premium Tax Credit (PTC), to their return.

Respondent issued a notice of deficiency for 2015 disallowing Mrs. Fisher's PTC of $4,452 and determining a tax deficiency of that same amount. Before the hearing respondent filed a motion for summary judgment. Petitioners did not file a response, but Mr. Fisher appeared at the hearing on respondent's motion in Tampa, Florida.

## Discussion

### I. Summary Judgment

Rule 121(a) provides that either party may move for summary judgment upon all or any part of the legal issues in controversy. Full or partial summary judgment may be granted only if it is demonstrated that no genuine issue exists as to any material fact and that the legal issues presented by the motion may be decided as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).

[*4]   In summary judgment cases the burden is on the moving party to demonstrate that no genuine issue as to any material fact remains and that he is entitled to judgment as a matter of law.  FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74-75 (2001).  The evidence is viewed in the light most favorable to the nonmoving party.  Bond v. Commissioner, 100 T.C. 32, 36 (1993).  However, the nonmoving party is required "to go beyond the pleadings and by * * * [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting rule 56(e) of the Federal Rules of Civil Procedure); see also Rule 121(d); Rauenhorst v. Commissioner, 119 T.C. 157, 175 (2002); FPL Grp., Inc. & Subs. v. Commissioner, 115 T.C. 554, 559 (2000).

At the hearing, Mr. Fisher expressly agreed with the facts as presented in respondent's motion.  Accordingly, we conclude that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.

II.   The Premium Tax Credit

Section 36B allows a PTC to subsidize the cost of health insurance purchased through a health insurance exchange by taxpayers meeting certain statutory requirements.  See sec. 1.36B-2(a), Income Tax Regs.  This provision

**[*5]** was enacted as the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, secs. 1401, 10105(a), 124 Stat. at 213, 906 (2010). The PTC is generally available to individuals with household incomes between 100% and 400% of the amount of the FPL.[3] Sec. 36B(c)(1)(A), (d)(3)(B); see McGuire v. Commissioner, 149 T.C. 254, 259 (2017) (providing a full discussion of eligibility requirements).

The amount of the PTC is based on both the taxpayer's income and the cost of the benchmark qualified health plan.[4] Sec. 36B; sec. 1.36B-3(f), Income Tax Regs. PTC recipients are required to pay a percentage of their household income toward their insurance premiums. Sec. 36B(b)(3). The percentage used to determine the taxpayer's share of the premiums varies, with lower income households paying a smaller percentage of their household income toward their

---

[3]The FPL amount is established by the most recently published poverty guidelines in effect on the first day of the open enrollment period preceding that taxable year. Sec. 36B(d)(3); sec. 1.36B-1(h), Income Tax Regs.

[4]The benchmark qualified health plan is the "second lowest cost silver plan of the individual market in the rating area in which the taxpayer resides". Sec. 36B(b)(3)(B); see sec. 1.36B-3(f), Income Tax Regs.

**[*6]** premiums.  See sec. 36B(b)(3)(A)(i).  The percentages range from 2% to

9.5%.[5] Id.  The amount of the PTC is the lesser of either the monthly premium for

the qualified health plan or the excess of the adjusted monthly premium for the

benchmark qualified health plan over one-twelfth of the taxpayer's required share

of the annual premium.  Sec. 36B(b)(2); sec. 1.36B-3(g), Income Tax Regs.

For the purpose of determining PTC eligibility, household income is

generally defined as the "modified adjusted gross income" (MAGI) of the taxpayer

plus the aggregate MAGI of family members (1) for whom the taxpayer is allowed

deductions for personal exemptions and (2) who were required to file a Federal

income tax return under section 1.  Sec. 36B(d); sec. 1.36B-1(d) and (e)(1),

Income Tax Regs.  For this purpose MAGI means AGI increased by certain items

not applicable here.  Sec. 36B(d)(2)(B); see also sec. 62(a) (defining AGI).

Rather than require an eligible individual to wait until after filing a tax

return to realize the benefit of the PTC, the ACA provides for the advance PTC

payments if the individual qualifies under an advance eligibility determination.

McGuire v. Commissioner, 149 T.C. at 260 (citing ACA sec. 1412(a)(3), 124 Stat.

---

[5]The applicable percentage is computed by first determining the percentage that the taxpayer's household income bears to the FPL for the taxpayer's family size.  Sec. 1.36B-3(g)(1), Income Tax Regs.  The resulting FPL percentage is compared to the income categories described in the table in sec. 36B(b)(3)(A)(i) and then indexed for years after 2014.  Id.

[*7] at 232 (codified at 42 U.S.C. sec. 18082 (2012))).  The advance PTC

payments are generally paid directly to the insurer.  42 U.S.C. sec. 18082.

Sometimes circumstances change, and a taxpayer's actual annual income

might turn out to be more or less than was estimated in making the eligibility

determination for the advance PTC payments.  In that event the advance PTC

payments made on an individual's behalf must be reconciled with the PTC for

which that individual is actually eligible for the taxable year.  Sec. 36B(f).  Any

excess of advance PTC payments is then reflected as an increase in the

individual's income tax liability for that taxable year.  Sec. 36B(f)(2); see

McGuire v. Commissioner, 149 T.C. at 261.

The Exchange determined that Mrs. Fisher's household income was below

400% of the amount of the FPL when she applied for healthcare coverage in

December 2014.  However, Mrs. Fisher's household income significantly

increased when she married Mr. Fisher.  According to petitioners' 2015 tax return,

petitioners' household income for 2015 was $113,975.  Because petitioners'

household income was greater than 400% of the amount of the FPL ($79,160)[6] for

2015, petitioners were not eligible for the PTC and are required to repay the entire

---

[6]See supra note 4.  For a three-person household, the FPL for 2015 for the contiguous States was $19,790, and 400% of the amount of the FPL was $79,160. See 79 Fed. Reg. 3593 (Jan. 22, 2014).

[*8] amount of the advance PTC payments made on Mrs. Fisher's behalf during that year.

Petitioners argue that because Mrs. Fisher was eligible for the PTC before petitioners married, they should not be required to repay the entire amount of the advance PTC payments made on her behalf.

Regulations provide for an "alternative computation" to address circumstances where taxpayers (like petitioners) are unmarried at the beginning of the taxable year, marry during the year, and file a joint return for the same taxable year. See sec. 1.36B-4(b)(2)(i), Income Tax Regs. Taxpayers who qualify for the alternative computation may use it to compute their additional tax liability for the taxable year. Id. To be eligible for the alternative computation, taxpayers must have been unmarried at the beginning of the taxable year and married at the end of the taxable year and at least one of them must have received advance PTC payments. Id.

Taxpayers' additional tax liability using the alternative computation is equal to the excess of the taxpayers' advance PTC payments for the taxable year over the amount of the "alternative marriage-year credit." Id. subdiv. (ii)(A). The alternative marriage-year credit is the sum of both taxpayers' "alternative premium

[*9] assistance amounts for the premarriage months" and the "premium assistance amounts for the marriage months."  Id.

Taxpayers compute the alternative premium assistance amounts for premarriage months for each taxpayer and for each full or partial month the taxpayers are unmarried.  Id. subdiv. (ii)(B).  The alternative premium assistance amount for premarriage months is equal to the excess of the taxpayer's benchmark qualified health plan premium amount[7] over the taxpayer's required contribution amount.[8]  Id.; see sec. 1.36B-4(b)(5), Example (2), Income Tax Regs.  When calculating the taxpayer's contribution amount for premarriage months, each taxpayer uses "one-half of the actual household income for the taxable year and treats family size as the number of individuals in the taxpayer's family prior to the marriage."  Sec. 1.36B-4(b)(2)(ii)(B), Income Tax Regs.; see also 1.36B-4(a)(2), Income Tax Regs.

Taxpayers compute the alternative premium assistance amounts for marriage months using the same formula employed to calculate the premium assistance amounts for premarriage months, except that the taxpayer's contribution

---

[7]See supra note 5.

[8]The required contribution amount is equal to the taxpayer's household income times the applicable percentage.  Secs. 1.36B-3(d)(1)(ii), 1.36B-4(b)(1), Income Tax Regs.

**[\*10]** amount is determined using the taxpayers' joint household income and family size at the end of the taxable year. Sec. 1.36B-4(b)(2)(ii)(C), Income Tax Regs. Taxpayers compute the premium assistance amount for the marriage months for each full month the taxpayers are married. Id.

Petitioners are eligible for the alternative computation because they were unmarried at the beginning of the taxable year and married at the end of that same year, they filed a joint return for the taxable year, and at least one of them, Mrs. Fisher, received advance PTC payments during that year. See id. subdiv. (i).

To calculate petitioners' additional tax liability using the alternative computation, we first determine the amount of petitioners' alternative marriage-year credit. To do this, we compute petitioners' alternative premium assistance amounts for premarriage months and premium assistance amounts for marriage months. See id. subdiv. (ii)(A).

Because Mr. Fisher did not have Exchange coverage at any point in 2015, we compute the premium assistance amount for premarriage months for Mrs. Fisher only. Mrs. Fisher's premium assistance amount for premarriage months is the excess of her benchmark plan premium over her required contribution amount. See id. subdiv. (ii)(B); see also sec. 1.36B-4(b)(5), Example (2), Income Tax Regs.

[*11] We use Mrs. Fisher's monthly second lowest cost silver plan ($441.28)[9] to compute her benchmark plan premium for the 11 premarriage months (from January 2015 through November 2015). See sec. 1.36B-4(b)(5), Example (2), Income Tax Regs. Accordingly, Mrs. Fisher's benchmark plan premium amount is $4,854 ($441.28 × 11).

We compute Mrs. Fisher's required contribution amount for premarriage months by multiplying one-half of petitioners' household income for 2015 ($56,987.50) times the applicable percentage. See id. subpara. (2)(ii)(B); see also sec. 1.36B-4(a)(2), Income Tax Regs. The applicable FPL for a family of two in the 48 contiguous States for 2015 was $15,730. "Annual Update of the HHS Poverty Guidelines," 79 Fed. Reg. 3593 (Jan. 22, 2014). On the basis of this data, Mrs. Fisher's household income for the premarriage months is 362% of the FPL for 2015 ($56,987.50 ÷ $15,730), and the applicable percentage for computing her contribution amount is 9.56%. See sec. 1.36B-3(g)(1), (2), (3), Example (2), Income Tax Regs.; sec. 1.36B-3T(g)(1), Temporary Income Tax Regs., 79 Fed. Reg. 43627 (July 28, 2014); see also Rev. Proc. 2014-37, sec. 5, 2014-33 I.R.B. 363, 364. Accordingly, Ms. Fisher's required contribution for the premarriage

_____

[9]The Exchange issued Form 1095-A, Health Insurance Marketplace Statement, reporting the amount of $441.28 as Mrs. Fisher's monthly second lowest cost silver plan premium.

[*12] months is $4,994 ($56,987.50 × 0.0956 × 11 ÷ 12).  See sec. 1.36B-4(b)(5),

Examples (2), (4)(v), Income Tax Regs.

Because Mrs. Fisher's applicable benchmark plan premium ($4,854) is less

than her required contribution amount ($4,994), petitioners'alternative premium

assistance amount for premarriage months is zero.  See id. subpara. (2)(ii)(B); see

also sec. 1.36B-4(b)(5), Example (2), Income Tax Regs.

We next compute petitioners' premium assistance amounts for the marriage

months using petitioners' household income as reported on their 2015 tax return

($113,975) and a family size of three.  See sec. 1.36B-4(b)(2)(ii)(C), Income Tax

Regs.  Petitioners have no premium assistance amount for the marriage months

because their household income is over 400% of the amount of the FPL for a

family of three ($79,160).[10]  See id. subpara. (5), Example (4)(v).  Therefore,

petitioners premium assistance amount for the marriage months is zero.  See id.

Using the above computations, we now determine petitioners' alternative

marriage-year tax credit.  Petitioners' alternative marriage-year tax credit is equal

to the sum of their alternative premium assistance amounts for the premarriage

months (zero) and their premium assistance amounts for the marriage months

---

[10]See supra note 7.

**[\*13]** (zero).  See id. subpara. (2)(ii)(A).  Accordingly, petitioners' alternative marriage-year tax credit is zero.

Finally, we reconcile petitioners' alternative marriage-year tax credit with their advance PTC payments to determine their additional tax liability.  See id. para. (a)(1)(i).  Petitioners' additional tax liability is equal to the excess of their advance PTC payments ($4,452) over their alternative marriage-year credit (zero).  See id. para. (b)(2)(ii)(A).  Petitioners' advance PTC payments exceeded their alternative marriage-year credit by $4,452.  Consequently, petitioners must increase their tax liability by $4,452, which is the entire amount of the advance PTC payments made on Mrs. Fisher's behalf for 2015.

Petitioners do not dispute the computation of their alternative marriage-year credit or any of the information reported by the Exchange on Form 1095-A.  Rather, they contend that it is unfair to require them to repay an amount that Mrs. Fisher was eligible for before they married.  Although we are sympathetic to petitioners' situation, we are not a court of equity, and we cannot ignore the law to achieve what may be an equitable end.  Commissioner v. McCoy, 484 U.S. 3, 7 (1987); Stovall v. Commissioner, 101 T.C. 140, 149-150 (1993); Paxman v. Commissioner, 50 T.C. 567, 576-577 (1968), aff'd, 414 F.2d 265 (10th Cir. 1969).  The statute is clear; excess advance PTC payments are treated as an increase in the

**[\*14]** tax imposed.  Sec. 36B(f)(2)(A).  Petitioners received an advance of a PTC payment to which they ultimately were not entitled.  They are liable for the $4,452 deficiency.

We have considered all other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.