T.C. Memo. 2019-152

UNITED STATES TAX COURT

LIOR BLAS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1031-17.                          Filed November 18, 2019.

Lior Blas, pro se.

Amy Chang, Connor J. Moran, and Gregory M. Hahn, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined an $8,328 deficiency in petitioner's Federal income tax for 2014.  The issues for decision are whether advance payments of premium assistance tax credits (APTC) were made on behalf of petitioner under section 36B, Refundable Credit for Coverage Under a

[*2] Qualified Health Plan, and whether petitioner is entitled to deduct a $2,798 alleged casualty loss under section 165.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. We incorporate the stipulation of facts and the attached exhibits by this reference. Petitioner resided in Alaska when he timely filed his petition.

I.    Petitioner's Marketplace Coverage

In November 2013 petitioner was unemployed and did not have health insurance. Worried about being subject to a penalty for not having health insurance, petitioner accessed the Health Insurance Marketplace (Marketplace) website and applied for health insurance. Petitioner stated on his application that he (1) was unmarried, (2) had a family size of one, and (3) had a household income of $15,000.

On the basis of petitioner's reported household income, the Marketplace determined that petitioner was eligible for APTC payments in the maximum amount of $765. Petitioner enrolled in the Moda Health (Moda) Be Aligned plan, with a monthly premium of $694 and a coverage start date of January 1, 2014.

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] Because the APTC payments covered the entire amount of petitioner's 2014 insurance premiums, Moda did not bill petitioner for any part of those premiums. In December 2013 Moda sent a letter to petitioner welcoming him into its Be Aligned plan. Moda also issued an insurance card to petitioner and mailed it to his home address in Chugiak, Alaska.

Petitioner's financial situation improved in December 2013 when he got a temporary job with MRI Staffing as an interim comptroller. Petitioner held this position continuously throughout 2014. Petitioner did not receive health insurance from MRI Staffing. His Marketplace coverage with Moda continued throughout 2014.[2]

Throughout 2014 petitioner was unaware that Moda was receiving the APTC payments on his behalf. Moda did not send any billing statements to petitioner for his 2014 coverage. Nor did the Marketplace send any letters to petitioner regarding his health insurance coverage in 2014. Petitioner did not receive any medical care in 2014.

In December 2014 Moda sent a billing statement to petitioner notifying him that a premium of $237 was due for insurance coverage commencing January

---

[2] Petitioner never reported to the Marketplace that his financial situation had improved.

[*4] 2015. Petitioner failed to make the payment. In 2015 Moda also sent letters and billing statements to petitioner seeking payment of his outstanding insurance premiums for his 2015 insurance coverage.

II.    Petitioner's 2014 Tax Return and Examination

On January 12, 2015, the Marketplace sent to petitioner Form 1095-A, Health Insurance Marketplace Statement, and a letter informing him that he was required to complete and file Form 8962, Premium Tax Credit (PTC), with his 2014 Federal income tax return.

Petitioner filed his 2014 Federal income tax return on October 19, 2015, claiming one personal exemption and no dependents. Further, petitioner reported adjusted gross income (AGI) of $83,942. Petitioner failed to attach Form 8962 to his tax return.

On January 25, 2016, during the examination of petitioner's 2014 tax return, the Internal Revenue Service asked petitioner to complete and file Form 8962. He completed this form reporting a family size of two and a modified AGI of $83,942. He also entered $8,328 on line 11, column (f), Annual advance payment of PTC, of Form 8962.

On November 22, 2016, respondent issued a notice of deficiency to petitioner for the taxable year 2014. In the notice respondent determined that

[*5] petitioner (1) received the benefit of APTC payments of $8,328, (2) was not entitled to any PTC for 2014, and (3) was responsible for repaying the excess of APTC paid on his behalf in 2014 ($8,328) over the PTC to which he was allowed ($0).  On January 13, 2017, petitioner timely filed a petition to commence this case.  In his petition, petitioner alleges "Phantom income" and "dispute[s] receiving and/or using the [APTC] credits".

## OPINION

### I.    Burden of Proof and Burden of Production

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer ordinarily bears the burden of proving those determinations erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioner argues that respondent must produce evidence that the APTC payments were made on his behalf in 2014.  Respondent disagrees and contends that nothing in the Code places the burden on him to produce affirmative proof of the APTC payments.  Specifically, respondent argues that he does not bear the burden of production under section 6201(d).  The resolution of this case, however, does not depend on which party has the burden of production.  We decide this case

[*6] on the preponderance of the evidence in the record.[3] See Knudsen v. Commissioner, 131 T.C. 185, 189 (2008), supplementing T.C. Memo. 2007-340; Schank v. Commissioner, T.C. Memo. 2015-235, at *16.

II.     The Premium Tax Credit

Section 36B allows a PTC to subsidize the cost of health insurance purchased through a health insurance marketplace by taxpayers meeting certain statutory requirements.  See sec. 1.36B-2(a), Income Tax Regs.  This provision was enacted as the Patient Protection and Affordable Care Act (ACA), Pub. L. No. 111-148, secs. 1401 and 10105(a), 124 Stat. at 213, 906 (2010).  The PTC is generally available to individuals with household incomes between 100% and 400% of the Federal poverty line (FPL).  Sec. 36B(c)(1)(A), (d)(3)(B); see McGuire v. Commissioner, 149 T.C. 254, 259 (2017) (providing a full discussion of eligibility requirements).

---

[3] Sec. 7491(a)(1) provides that, if a taxpayer offers credible evidence with respect to any factual issue relevant to determining his tax liability, the burden of proof with respect to the issue is on the Commissioner.  See Higbee v. Commissioner, 116 T.C. 438, 442-443 (2001).  This section applies only if the taxpayer complies with the substantiation requirements in the Code, maintains all required records, and cooperates with the Commissioner with respect to witnesses, information, documents, meetings, and interviews.  Sec. 7491(a)(2)(A) and (B).  We need not allocate the burden of proof because our findings are based on a preponderance of the evidence.

[*7]   Rather than require an eligible individual to wait until after filing a tax return to realize the benefit of the PTC, the ACA provides for APTC payments if the individual qualifies under an advance eligibility determination.  McGuire v. Commissioner, 149 T.C. at 260 (citing ACA sec. 1412(a)(3), 124 Stat. at 232 (codified at 42 U.S.C. sec. 18082(a)(3) (2012))).  The Secretary of the Department of Health and Human Services (HHS Secretary) is required to determine whether individuals enrolling in qualified health plans through a marketplace are eligible for the PTC and, if so, to notify the Secretary of the Department of the Treasury (Treasury Secretary) of that fact.  42 U.S.C. sec. 18082(c)(1).  The Treasury Secretary, in turn, is required to make periodic APTC payments to the insurers offering the qualified health plans in which the eligible individuals enrolled.  Id. para. (2)(A).

The insurers who receive the payments are required to notify the HHS Secretary and the relevant marketplace of the reduction in premiums.  Id. subpara. (B)(i) and (ii).  The insurers must also send billing statements and include with each billing statement the amount by which the premium for the plan has been reduced by reason of the APTC.  Id. cl. (iii).

Sometimes circumstances change and a taxpayer's actual annual income might turn out to be more or less than was estimated in making the eligibility

[*8] determination for the APTC payments. In that event the APTC payments made on an individual's behalf must be reconciled with the PTC for which that individual is actually eligible for the taxable year. Sec. 36B(f). Any excess of APTC payments is then reflected as an increase in the individual's income tax liability for that taxable year. Sec. 36B(f)(2); see McGuire v. Commissioner, 149 T.C. at 261.

The Marketplace determined that petitioner's household income[4] was below 400% of the FPL when he applied for healthcare coverage in November 2013. However, petitioner's household income significantly increased when he began working in December 2013. Petitioner reported AGI of $83,942 on his 2014 tax return. Petitioner does not deny that his reported income level makes him ineligible for the PTC. Because petitioner does not raise a point of law or any other factual dispute, we need not delve into the details of the PTC.

Petitioner's sole contention is that no APTC payment was actually made on his behalf, and thus he should not be held liable for "Phantom income". Petitioner argues that the absence of billing statements for his 2014 coverage is the strongest evidence that no APTC payment was made on his behalf during that year. In

---

[4] Petitioner's reported household income of $15,000 was computed to be 104.53% of the FPL on his health insurance application.

[*9] response, respondent argues that petitioner did not receive billing statements because the APTC payments covered the full amounts of his premiums.

Despite the lack of billing statements for petitioner's 2014 insurance coverage, the preponderance of the evidence establishes that petitioner was the beneficiary of APTC payments in 2014. At trial respondent submitted business records from Moda and the Marketplace. The Marketplace's records establish that in 2013 petitioner applied for insurance coverage on the Marketplace website. On his application petitioner reported household income of $15,000, which qualified him for monthly APTC payments of up to $765. At trial petitioner acknowledged completing this application.

Moda's business records establish that petitioner was enrolled in its Be Aligned plan with a coverage start date of January 1, 2014. In 2014 the monthly premium for this plan was $694, which is the same monthly amount reported on the Form 1095-A.

We understand petitioner's concerns about the lack of billing statements, which in different circumstances might support a finding that no APTC payments were made. In this case, however, petitioner admitted applying for insurance through the Marketplace, and respondent provided evidence that he received

[*10] insurance coverage for which APTC payments were made. Thus, we find it more likely than not that petitioner was the beneficiary of the APTC payments.

Although we are sympathetic to petitioner's situation, we are not a court of equity, and we cannot ignore the law to achieve an equitable end. Commissioner v. McCoy, 484 U.S. 3, 7 (1987); Stovall v. Commissioner, 101 T.C. 140, 149-150 (1993); Paxman v. Commissioner, 50 T.C. 567, 576-577 (1968), aff'd, 414 F.2d 265 (10th Cir. 1969). The statute is clear; excess APTC payments are treated as an increase in the tax imposed. Sec. 36B(f)(2)(A). Petitioner received an APTC to which he ultimately was not entitled. He is liable for the $8,328 deficiency.

## III. Petitioner's Alleged Casualty Loss

At trial and for the first time in this litigation, petitioner alleged that he had a casualty loss of $2,798 in February 2014. No such loss was reported on petitioner's tax return for 2014.[5]

Taxpayers may deduct losses sustained in a taxable year and not compensated for by insurance or otherwise. Sec. 165(a). For individual taxpayers the deduction is limited to losses incurred in a trade or business, in any transaction entered into for profit, or otherwise if the loss arises "from fire, storm, shipwreck,

---

[5] Petitioner raised this contention at trial without objection by respondent. This matter was therefore tried by consent and is treated as if it had been raised in the pleadings. See Rule 41(b)(1).

[*11] or other casualty, or from theft." Sec. 165(c). Other casualties are those "caused by a sudden, unexpected, or unusual event". Maher v. Commissioner, 680 F.2d 91, 92 (11th Cir. 1982), aff'g 76 T.C. 593 (1981); see Appleman v. United States, 338 F.2d 729, 730-731 (7th Cir. 1964); Rev. Rul. 72-592, 1972-2 C.B. 101. Further, a loss must be evidenced by closed and complete transactions, fixed by identifiable events, and actually sustained during the taxable year. Sec. 1.165-1(b), Income Tax Regs. The burden of showing entitlement to a claimed deduction is on the taxpayer. Welch v. Helvering, 290 U.S. at 115.

At trial petitioner generally testified about his entitlement to a casualty loss. However, he provided no details about the circumstances or timing of the loss.[6] Therefore, we hold that petitioner has not established entitlement to any casualty loss for 2014.

We have considered all other arguments made by the parties, and to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

---

[6] In his opening brief petitioner explained that his alleged casualty loss resulted from two "modification payments made by * * * [petitioner] that were lost by Bank of America". However, statements in briefs are not evidence. See Rule 143(c).

**[*12]** To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.